[Crim. No. 15668. First Dist., Div. Two. May 11, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
RANDALL KYLE WILSON, Defendant and Respondent.

[blacked out]

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Appellant.

Sheldon Portman, Public Defender, Lloyd G. Stephens, Nancy Hoffman and Richard C. Neuhoff, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

THE COURT.*—Respondent, Randall Wilson, was charged with robbery (Pen. Code, § 211) by an indictment filed in Santa Clara County Superior Court April 20, 1975. Following his arraignment and plea of not guilty, a hearing to dismiss the indictment pursuant to Penal Code section 1389 et seq. (Agreement on Detainers, hereafter referred to as the Agreement) was held. The motion was granted and the People have appealed.

The mandatory dismissal provision of the Agreement has never been construed by the California courts; therefore, it is necessary to review the chronology of events and statutory provisions in some detail.

---

*Before Taylor, P. J., Kane, J., and Rouse, J.

On May 19, 1975, a complaint was filed in Santa Clara County Municipal Court alleging that the respondent was guilty of a violation of Penal Code section 211. On August 28, 1975, respondent was serving a sentence of one to five years for breaking and entering at the central prison unit of the North Carolina Department of Corrections. On that date he received a notice entitled "Agreement on Detainers: Form 1, NOTICE OF UNTRIED INDICTMENT, INFORMATION OR COMPLAINT AND OF RIGHT TO REQUEST DISPOSITION." The notice advised him of the complaint lodged in Santa Clara County. The notice also informed Wilson to notify the superintendent of the institution in which he was confined in the event he wished to request a final disposition of the matter.

On September 3, 1975, Wilson requested the legal department of the North Carolina Department of Corrections to file the necessary papers to dispose of the pending case. He was advised by the authorities that it would take one to two months to process his request. Wilson apparently felt such a delay was unwarranted and prepared his own request for a trial. The request was sent by registered mail and was received by the Santa Clara County Superior Court and district attorney's office on September 26, 1975.

On November 4, 1975, the district attorney's office received respondent's request for a trial and the formal certificate from the North Carolina Department of Corrections.

On March 30, 1976, the Santa Clara County Superior Court received respondent's motion for dismissal.

On April 22, 1976, Wilson was delivered to the Sheriff of Santa Clara by the North Carolina prison authorities. Respondent's case was originally set for trial on April 27, 1976.

Penal Code section 1389 et seq. codifies an agreement between this state, 43 other states and the federal government for disposing of charges lodged against persons already incarcerated in other jurisdictions. In enacting the statute the Legislature stated, ". . . it is . . . the purpose of this agreement to encourage the *expeditious* and *orderly* disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." (Pen. Code, § 1389, art. I; italics added.) The Legislature further required that: "This agreement shall be liberally construed so as to effectuate its purposes." (Pen. Code, § 1389, art. IX.)

The Agreement provides in parts pertinent to this appeal that: "Article III (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to ·be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested. . . .

"Article V (c) . . . in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." (Pen. Code, § 1389.)

The People contend the trial court erred in dismissing the indictment because the 180-day period should not have begun to run until November 4, 1975, when the district attorney's office received the certificate and respondent's request for final disposition from the North Carolina prison officials. This was approximately 174 days prior to the original trial date. The court below accepted respondent's position that the 180-day period commenced running on September 26, 1975, 213 days prior to the trial date, upon the receipt of respondent's unofficial request for a trial on the charges. In construing the statute we find that the determinative issue is not whether the unofficial request constituted

substantial compliance with the Agreement; but rather, whether the two-month delay between respondent's original request for final disposition to the warden and the district attorney's receipt of the same from the North Carolina authorities was reasonable. The present record is inadequate to determine this issue and therefore the cause must be remanded.

The Agreement contains no provision by which the prisoner can informally notify the appropriate prosecuting official of the state lodging the detainer of his request for a trial. This is understandable in view of the purpose of the Agreement to provide an orderly disposition of detainers. That goal is achieved in part by the obligation placed on the warden of the prison in the sending state to forward, along with the prisoner's request for final disposition, the information set out in article III, subdivision (a) regarding the prisoner's release date. This information is often necessary before the prosecuting officials can make an intelligent decision as to whether the person should be returned for trial. (See *Beebe* v. *State* (Del. 1975) 346 A.2d 169, 171.)

Respondent's self-help effort points up the difficulties which arise when the prisoner seeks to proceed under the Agreement on his own. Respondent's letter was deficient in that it did not state the time remaining to be served on the sentence or the time already served; the amount of good time earned; the time of parole eligibility or any decisions of the parole agency relating to him. Even if the inmate could compile all of this information he could never tender the offer of temporary custody which the appropriate official of the sending state must include with the certificate provided for in article III. (Pen. Code, § 1389, art. V, subd. (a).) Furthermore the official nature of the certificate puts the district attorney's office on notice that the prisoner is proceeding under the Agreement. This procedure reduces the necessity of the district attorney's office screening all manner of communications to determine the validity of their request for an immediate trial. (See *Pittman* v. *State* (Del. 1973) 301 A.2d 509, 516, Herrmann, J., dis.) Orderly disposition is frustrated to the extent that informal requests take the place of the communications contemplated under the Agreement. However, we need not decide whether there are circumstances in which the prisoner's self-help effort to request a trial will commence the running of the 180-day period.

■ The prisoner's sole obligation under the Agreement is to advise the warden of his request for final disposition of the charges on which the detainer is based. (*Pittman* v. *State, supra,* 301 A.2d 509, 512; *People* v.

*Esposito* (1960) 37 Misc.2d 386, 393-394 [201 N.Y.S.2d 83].) Respondent's September 3, 1975, request to the legal department of the North Carolina Department of Corrections satisfied this requirement. Those cases which have found the inmate was not entitled to the benefits of the Agreement have been based on the inmate's failure to meet this initial burden. (See *People v. MacDonald* (1973) 36 Cal.App.3d 103, 108 [111 Cal.Rptr. 266]; *Beebe v. State, supra,* 346 A.2d 169, 171; *Ekis v. Darr* (1975) 217 Kan. 817 [539 P.2d 16, 22].)

Once the inmate has made this request the Agreement places the burden of compliance with the procedural requirements upon the party states and their agents. When the warden or other prison official receives the inmates request for final disposition he is duty bound to *"promptly forward* it together with the certificate to the appropriate prosecuting official . . . ." (Pen. Code, § 1389, art. III, subd. (b); italics added.) "In the performance of these duties, the Warden has no discretion. Over their performance [of these duties] the prison inmate has no power of supervision." *(People v. Esposito, supra,* 37 Misc.2d at p. 394.) The dismissal provision of the Agreement mandates that the adverse consequences of the authorities failure to comply with the act shall be visited on the prosecution.[1]

The People's argument that the dismissal sanction is too severe for what was at most negligence on the part of North Carolina ignores the language of the Agreement.[2] ■ Article V, subdivision (c) requires that the indictment, information or complaint be dismissed with prejudice if the inmate is not brought to trial within the period provided in article III. The inmate is not required to show prejudice or misconduct; the dismissal is mandatory once the court has determined the statutory period has run. *(State v. Mason* (1966) 90 N.J.Super. 464 [218 A.2d 158, 163].)

■ The North Carolina prison authorities took two months to send the certificate and inform the prosecuting authorities of the respondent's request for final disposition of the charges. If this period is found to be

---

[1]While the district attorney's office cannot insure the compliance of the correctional officers of other states, they are better situated than the inmate to see that the requirements of the law are met.

[2]The record reveals that the certificate from the North Carolina authorities included the date respondent made his request for a trial. The district attorney's office could have avoided the problem which arose in this case by promptly notifying North Carolina of their decision to accept temporary custody. (See Pen. Code, § 1389, art. V, subd. (b).) It appears the district attorney's office made no effort to respond to the request until April 7, 1976, five months after they received the certificate from North Carolina.

unreasonable then the prison officials have failed to meet their statutory duty. The respondent has shown that the initial trial date was not within 180 days of his request to the warden for final disposition; therefore, he is entitled to the benefits of the Agreement if North Carolina's delay in forwarding the certificate is found to be in violation of its duty to promptly forward the information.

Common sense compels such a conclusion. Both the purpose and the express language of the Agreement are intended to promote the expeditious resolution of detainers. This goal is too easily frustrated if the sending state is not held to its obligation to promptly forward the certificate and inmate request. Absent the implied requirement that this duty will be performed in a reasonable time, an inmate's rights under the Agreement would never mature if the sending state simply failed to comply with article III. We also note that this standard will provide equal protection to those inmates, unlike the respondent, who are unable to pursue their rights under the Agreement by directly communicating with the prosecuting authorities.

The order of dismissal is reversed and the cause remanded to the trial court to permit the People, if they are so inclined, to request a further hearing on the issue of the reasonableness of the two-month delay described herein.

If the People do not move for such a hearing within 30 days of the finality of the decision herein, the trial court shall reinstate the order of dismissal.

A petition for a rehearing was denied June 10, 1977, and respondent's petition for a hearing by the Supreme Court was denied July 6, 1977. Bird, C. J., was of the opinion that the petition should be granted.