[Civ. No. 48677. First Dist., Div. One. Aug. 13, 1980.]

PHILLIP SELFA, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 48678. First Dist., Div. One. Aug. 13, 1980.]

JON SELFA, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Sheldon Portman, Public Defender, C. Randall Schneider, Deputy Public Defender, and Brian Madden for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Real Party in Interest.

OPINION

GRODIN, J.—Petitioners Jon and Phillip Selfa seek writs of prohibition or mandate to compel respondent court to dismiss pending charges against them for violation of their statutory and/or constitutional rights to a speedy trial. We find merit in their statutory claim, and, on that basis, entitlement to the mandatory relief sought.

*Factual Background.* In August 1978 petitioners were arrested and charged with responsibility for a bank robbery which occurred that month. They were held to answer in October 1978 and trial was set for the following month. The district attorney, however, decided not to proceed with the trial at that time because he believed that the United

States Attorney would undertake prosecution and (since multicounty acts were involved) that he would be in a better position to do so. On the day of the trial he moved for dismissal of the charges and, over petitioners' objections, the motion was granted.

On April 24, 1979, no federal indictment having been returned, the district attorney refiled the same charges against petitioners. On that date, both petitioners were incarcerated in federal correctional institutions in California (Jon at Lompoc and Phillip at Terminal Island) on unrelated charges. On May 10, 1979, the district attorney instructed that detainers be sent to the two institutions, advising them of the state charges "Pursuant to 1389 of the California Penal Code." For some reason neither petitioner was notified of the detainer against him until more than three months later: Phillip on August 23 and Jon on August 24. Phillip, upon receiving notification, asked his correctional counselor how to get the case disposed of as quickly as possible. Acting upon the counselor's advice, he went to the law library, asked for a "speedy trial form," filled it in, and mailed it the next day. A blank at the bottom of the form said "demanding a speedy trial as per..." and he typed in "Calif. Penal Code." Jon, upon receiving notification of the detainer, asked the records office at his institution to do the speedy trial paperwork, and he signed the papers they provided. Both demands for speedy trial were received by the district attorney August 30, 1979. Both demands were accompanied by federal offers of temporary custody.

Phillip was taken into Santa Clara County custody on October 23, 1979, and Jon on November 14, 1979. By information filed on December 11, 1979, they were jointly charged with conspiracy to commit robbery (Pen. Code, § 182) and two counts of robbery (Pen. Code, § 211), and Jon was charged with two additional counts of robbery with a firearm use allegation. They were arraigned on December 11, 1979, and objected to the setting of any trial date. Their motions to dismiss pursuant to Penal Code section 1381.5 and for denial of their constitutional right to a speedy trial were heard and denied in January 1980 and a trial date was set when this court stayed trial and subsequently issued its alternative writs.

*Discussion.* Penal Code section 1381.5, upon which petitioners rely, requires that a defendant who is held in a federal correctional institution, and who requests that he be brought to trial on state charges pending against him, must be brought to trial (subject to exceptions not relevant here) within *90 days* after receipt by the district attorney of an

assent from authorized federal authorities for the defendant's release; otherwise, the action is to be dismissed, though without prejudice (Pen. Code, § 1381.5). Here, the date that set the statutory time clock running was August 30, 1979. Neither petitioner was brought to trial within 90 days from that date. Consequently, if section 1381.5 applied, the trial court erred in not dismissing the charges.

The People contend that Penal Code section 1389, rather than section 1381.5, is the controlling section for this case. Section 1389, which reflects an interstate agreement on detainers, applies to persons imprisoned in one party state while there is pending in another party state an untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner. (Pen. Code, § 1389, art. III, subd. (a).) The term "state" is used to include the United States of America (Pen. Code, § 1389, art. II, subd. (a)). The statute provides that the prisoner "shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition . . . ." (Pen. Code, § 1389, art. III, subd. (a).) By that reckoning, petitioners were brought to timely trial.[1]

The issue thus posed is whether the 90-day period in section 1381.5 or the 180-day period in section 1389 controls when, as here, a prisoner's demand complies with the requirements of both. (*People v. MacDonald* (1973) 36 Cal.App.3d 103, 114 [111 Cal.Rptr. 266]; *People v. Wilson* (1977) 69 Cal.App.3d 631, 636 [138 Cal.Rptr. 259] [Pen. Code, § 1389].)[2] In resolving this issue it is pertinent to consider the two statutes in historical perspective. Prior to 1963, California had only one detainer statute, and that applied only to prisoners in state institu-

---

[1] It is arguable that the period under section 1389 began to run *earlier* than August 1979 on the theory that petitioners had a right to prompt notification of the detainers. (Cf. *People v. Wilson* (1977) 69 Cal.App.3d 631, 637-638 [138 Cal.Rptr. 259].) In light of our disposition it is unnecessary to reach that issue.

[2] The forms filed by petitioners made reference to "Agreement on Detainers," but the body of the forms simply requested "final disposition" with no mention of a time period or specific statutory sections. The Attorney General does not contend that petitioners were bound by the reference on the forms. He does argue that the district attorney "opted" for section 1389 when he designated that section in his detainer. There is no evidence that petitioners were ever advised of that designation, much less of its import. In any event, we do not read the statutes as creating an option in the prosecuting attorney to decide which shall apply. Under section 1389 it is the prisoner's demand for trial, not the filing of a detainer, which triggers the 180-day period.

tions. (Pen. Code, § 1381.) Sections 1381.5 and 1389 were both added in 1963 (Stats. 1963, ch. 1567, § 1, p. 3151; Stats. 1963, ch. 2115, § 1, p. 4394). At the time of their enactment, the federal government was not yet a party to the interstate agreement on detainers; it became a party in 1970 (18 U.S.C. App., pp. 1395-1398). Moreover, even after the United States became a party there remained substantial doubt as to the agreement's application to *intrastate* transfers (cf. *State* ex rel. *Stanley* v. *Davis* (Mo.App. 1978) 569 S.W.2d 202, 206; and see Note, *Effective Utilization of Criminal Detainer Procedures* (1976) 61 Iowa L.Rev. 659, 685), and it was not until 1979 (*after* the detainer letters here) that a California court held section 1389 applicable to transfer from a federal facility to a state or county facility within this state. (*People* v. *Reyes* (1979) 98 Cal.App.3d 524 [159 Cal.Rptr. 572].)

In 1963, therefore, the Legislature must have considered section 1381.5 to be the controlling provision with respect to the time within which persons incarcerated in federal institutions in California should be brought to trial. That perspective is clearly reflected in our state Supreme Court's decision in *Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 811 [51 Cal.Rptr. 921, 415 P.2d 809]: "The Legislature has enacted specific provisions declaratory of the constitutional right to a speedy trial. (Pen. Code, §§ 1381-1389.7.) By section 1381 of the Penal Code, prisoners incarcerated in California institutions are entitled to a trial of outstanding criminal complaints within 90 days of a written demand upon the district attorney of the county in which the charge is pending.... *In 1963, the Legislature provided similar formal procedures for those imprisoned in sister states signatory to the interstate agreement on detainers (Pen. Code, §§ 1389-1389.7) and for those incarcerated in federal prisons* (Pen. Code, § 1381.5)." (Italics added.)

Thus, a person incarcerated in a federal prison in California in 1963 had a statutory right to be brought to trial, upon demand, within 90 days. The Attorney General would have us conclude that 15 years later, without relevant change in any California statute, a prisoner similarly situated no longer had that right because the federal government decided to become a party to the agreement on interstate detainers. We cannot accept that proposition.

■ We have a duty, of course, to harmonize statutes relating to the same subject matter. (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 687 [91 Cal.Rptr. 585, 478 P.2d 17]; *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].) All provisions should be

given effect, and attention should be paid to the possible consequences of particular interpretations. (*Mount Sutro Defense Committee* v. *Regents of University of California* (1978) 77 Cal.App.3d 20, 35 [143 Cal.Rptr. 365]; *Organization of Deputy Sheriffs* v. *County of San Mateo* (1975) 48 Cal.App.3d 331, 340 [122 Cal.Rptr. 210].) ▮ Also pertinent here is the principle that a more specific statute will normally control over a general one. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].)

Here, section 1389 is the more general statute, applicable to prisoners in institutions of all participant states and to prisoners in federal institutions both within and outside the State of California. Its principal thrust is upon the resolution of detainers, placing a duty upon each participating state to deliver a prisoner to a state-signator upon request. (*United States* v. *Mauro* (1978) 436 U.S. 340, 349-353; 355, fn. 23 [56 L.Ed.2d 329, 340-343, 344, 98 S.Ct. 1834].) It contains many provisions which detail the relationship between a sending state and a receiving state. (*Ibid.*) Section 1381.5, by contrast, applies specifically to California, and focuses upon the right of prisoners in federal institutions in our state to the same 90-day trial right as is provided prisoners in state institutions. (*Barker* v. *Municipal Court, supra*, 64 Cal.2d 806.) To view section 1389 as the Attorney General would have us view it would, in effect, render section 1381.5 a nullity.

A criminal defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Walker* (1976) 18 Cal.3d 232, 242 [133 Cal.Rptr. 520, 555 P.2d 306]). Indeed, section 1389 by its terms provides that it "shall be liberally construed so as to effectuate its purposes" (art. IX). In *United States* v. *Mauro, supra*, 436 U.S. 340, the government argued that to view the United States as a receiving state under the interstate agreement would create potential conflict with the Speedy Trial Act of 1974 (18 U.S.C. § 3161 et seq.), to which the court responded, "In situations in which two different sets of time limitations are prescribed, the more stringent limitation may simply be applied." (436 U.S. at pp. 356-357, fn. 24 [56 L.Ed.2d at p. 345].) By these principles of statutory interpretation as well, petitioners are entitled to the benefit of the 90-day provision contained in section 1381.5.

The Attorney General argues that under petitioners' theory a section 1381.5 dismissal *without* prejudice may have the effect of delaying the trial beyond the 180-day limit of section 1389, which requires dismissal *with* prejudice. (Art. V, subd. (c).) Assuming that the 180-day limit of section 1389 applies in such a situation, that possibility does exist. A similar time problem may be posed, however, by dismissal pursuant to other code sections, e.g., section 1382 (cf. *In re Blake* (1979) 99 Cal. App.3d 1004, 1011-1018 [160 Cal.Rptr. 781]), or section 995 or section 859b, depending on the circumstances and in the absence of a waiver. To the extent that such problems are an inevitable result of the coexistence of the two statutes, we must assume that the Legislature contemplated them and considered them tolerable; the alternative is to read section 1381.5 out of existence. Those problems in any event do not arise in the context of this case, since in view of the prior dismissals a section 1381.5 dismissal of pending charges will bar further prosecution (Pen. Code, § 1387). A peremptory writ will issue compelling respondent to dismiss the charges against them pursuant to Penal Code section 1381.5.

Racanelli, P. J., and Newsom, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied October 15, 1980. Manuel, J., was of the opinion that the petition should be granted.