Filed 9/1/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>QUOC AI NGUYEN,<br><br>    Defendant and Appellant. | H047893<br>(Santa Clara County<br> Super. Ct. Nos. C1910627, C1652927,<br> C1766436) |


Under the Interstate Agreement on Detainers (Detainer Agreement, Pen. Code, § 1389),[1] a person serving a sentence of imprisonment in one participating state and subject to a detainer for charges pending in another participating state may demand final disposition of those pending charges within 180 days of receipt of the demand.  Quoc Ai Nguyen's appeal calls for us to determine, as a threshold matter, whether another state's unreasonable delay in notifying him of his California detainer and right to demand final disposition of the underlying charges would entitle him to dismissal of his pending charges.  (§ 1389, art. III, subd. (a).)  Because interpretation of the congressionally sanctioned agreement is a matter of federal law, we follow a series of federal decisions holding that dismissal is not a remedy for breach of this duty of prompt notice.  We

---

[1] Unspecified statutory references are to the Penal Code and unspecified article references are to the Detainer Agreement (§ 1389).

therefore conclude that the hearing Nguyen requests as to the reasonableness of this delay would serve no purpose under the Detainer Agreement, and we affirm the judgment.

## I. BACKGROUND

In December 2016, the Santa Clara County District Attorney (District Attorney) filed a complaint (C1652927) charging Nguyen with possession for sale and transportation of a controlled substance.

Six months later, the District Attorney filed a complaint in a second case (C1766436) charging Nguyen with additional controlled substance offenses.

In July 2017, Nguyen was arrested in La Plata County, Colorado for selling marijuana. The following year, he was convicted and sentenced to six years in Colorado state prison.

On July 18, 2018, while incarcerated in Colorado, Nguyen sent an informal request to the warden for a final disposition of his pending charges in Santa Clara County.[2] Two days later, Nguyen forwarded his informal request to the District Attorney. Consequently, on August 28, 2018, the District Attorney lodged a detainer with the Colorado warden, citing his pending felony charges. The Colorado warden acknowledged receipt of the detainer the next day, August 29, 2018.

It was not until December 5, 2018, a delay of 14 weeks, that the Colorado warden served Nguyen with the detainer and notice of his right to demand final disposition of the charges. That same day, Nguyen formally requested final disposition of the charges; the District Attorney received Nguyen's request from the Colorado warden on December 21, 2018.

On March 4, 2019, Nguyen was transported to Santa Clara County and was arraigned the next day in his pending felony cases. Nguyen moved to dismiss these and

---

[2] Nguyen's informal request included the charges in the instant case as well as three misdemeanor matters not included in the record on appeal.

2

three pending misdemeanor matters under the Detainer Agreement, citing the lapse of more than 180 days from receipt by the Santa Clara County Superior Court and District Attorney of his informal, predetainer request for final disposition of his charges.

On May 31, 2019, a magistrate granted Nguyen's motion to dismiss, finding that "the clock [under section 1389, article III of the Detainer Agreement] began in July of 2017," when the District Attorney began extradition proceedings.[3]

In the superior court, the District Attorney filed a motion to compel the magistrate to reinstate the complaints pursuant to section 871.5. The superior court granted the motion and ordered the reinstatement of the previously dismissed complaints. Because the District Attorney had in the meantime obtained an indictment on all pending felony charges under a new case number, C1910627, the court later dismissed the felony complaints in light of the indictment.[4]

Nguyen thereafter pleaded guilty to a subset of the charges in return for a negotiated sentence and dismissal of the remaining counts. The trial court sentenced

---

[3] In a previous hearing, the parties informed the magistrate that an extradition warrant had been approved in 2017. As the magistrate acknowledged, an extradition proceeding is not governed by the Detainer Agreement. (See *United States v. Mauro* (1978) 436 U.S. 351, 360 (*Mauro*); see also *People v. Rhoden* (1989) 216 Cal.App.3d 1242.)

[4] The grand jury returned an 11-count indictment in case number C1910627 as follows: two counts of possession for sale or purchase for sale of cocaine base (Health & Saf. Code, § 11351.5; counts 1 & 5); two counts of possession for sale or purchase for sale of controlled substance (*id.*, § 11351; counts 2 & 6); four counts of transportation, sale, distribution of controlled substance (*id.*, § 11352, subd. (a); counts 3, 4, 7 & 8); two counts of misdemeanor possession of controlled substance paraphernalia (*id.*, § 11364, subd. (a); counts 9 & 11); misdemeanor possession of a specified controlled substance (*id.*, subd. 11377, subd. (a); count 10). The indictment further alleged an on-bail enhancement under section 12022.1.

3

Nguyen to the stipulated term of two years in prison,[5] concurrent to his six-year Colorado term. Nguyen timely appealed and was granted a certificate of probable cause.

## II.    DISCUSSION

Nguyen argues that the superior court erred by ordering the reinstatement of the dismissed complaints under section 871.5 without conducting a hearing to determine whether the Colorado warden unreasonably delayed notifying him of the detainer and his right under article III of the Detainer Agreement to request final disposition of his pending California charges.

### A.    *Standard of Review*

Upon a magistrate's dismissal of an action under the Detainer Agreement, the prosecutor may make a motion in the superior court to compel the magistrate to reinstate the dismissed complaint. (§ 871.5, subd. (a).) "The only ground for the motion shall be that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof." (§ 871.5, subd. (b).) On appeal, we directly examine the magistrate's ruling to determine if the dismissal was erroneous as a matter of law. (*People v. Shrier* (2010) 190 Cal.App.4th 400, 409-410 (*Shrier*).) Although we draw all reasonable inferences in favor of the magistrate's factual findings, if any, we review the magistrate's legal conclusions de novo. (*Id.* at p. 410.)[6]

---

[5] The trial court imposed concurrent two-year terms for each felony count of conviction and lesser concurrent terms in Nguyen's misdemeanor matters.

[6] Section 871.5, subdivisions (f) and (g) provide for writ review if the superior court grants a motion to compel reinstatement. But absent a statutory limitation requiring writ review as the exclusive remedy of a prejudgment order, a defendant is entitled to raise on appeal a claim that the trial court erred in issuing an order within the scope of section 1259. (*People v. Mena* (2012) 54 Cal.4th 146, 158.)

4

**B.**     *Legal Principles Governing the Detainer Agreement*

The Detainer Agreement, codified in California at section 1389, " 'facilitates the resolution of detainers, based on untried indictments, informations or complaints in one jurisdiction, lodged against persons who have "entered upon a term of imprisonment" in another jurisdiction.' " (*People v. Lavin* (2001) 88 Cal.App.4th 609, 612.)  An alternative to extradition[7] for the signatories—48 states, the federal government, and the District of Columbia—the Detainer Agreement "is intended to 'encourage the expeditious and orderly disposition' of any outstanding criminal charges." (*Netzley v. Superior Court* (2008) 160 Cal.App.4th 348, 357 (*Netzley*); §1389, art. I.)  "[T]he Detainer Agreement is a congressionally sanctioned interstate compact, the interpretation of which presents a question of federal law." (*Cuyler*, *supra*, 449 U.S. at p. 442.)

The Detainer Agreement defines the responsibilities of (1) the "sending state" in which a person is presently serving a sentence of imprisonment and (2) the "receiving state," in which that person still has pending charges that are subject to a "detainer."  "Detainer" is a term of art, " a formal notification, lodged with the authority under which a prisoner is confined, advising that the prisoner is wanted for prosecution in another jurisdiction." (*United States v. Kenaan* (1st Cir. 1977) 557 F.2d 912, 915 [distinguishing pre-Detainer Agreement practice of mere "request that the prisoner not be released until he could be taken into custody by the requesting state].)[8]

---

[7] Extradition is governed by the Uniform Criminal Extradition Act, codified in California at section 1584 et seq.  Unlike the Detainer Agreement in various respects, the Extradition Act has no provisions permitting a defendant to initiate or demand extradition. (*Cuyler v. Adams* (1981) 449 U.S. 433, 442 (*Cuyler*).)

[8] Although Nguyen successfully argued to the magistrate that he was effectively subject to a detainer when the District Attorney and San Jose Police Department informally communicated an intention to seek extradition, he no longer makes this argument on appeal.  Nguyen's trial counsel only briefly mentioned his current theory of delayed *notice* of the detainer during a hearing on the motion to dismiss.  To the extent

Under article III of the Detainer Agreement, a person serving a sentence in the sending state but subject to a detainer from the receiving state can demand a speedy disposition of the charges giving rise to the detainer.  (*Mauro*, *supra*, 436 U.S. at p. 351.)[9] To enable the person to make this demand, "[t]he warden of the institution in which the prisoner is incarcerated is required to inform him promptly of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges.  [Citation.]  If the prisoner does make such a request, the jurisdiction that filed the detainer must bring [the prisoner] to trial within 180 days.  [Citation.]"  (*Ibid*., fn. omitted; *People v. Garner* (1990) 224 Cal.App.3d 1363, 1370.)  The warden in the sending state "shall forthwith notify all appropriate prosecuting officers and courts" of the request.  (§ 1389, art. III, subd. (d).)  If the matter does not proceed to trial within the 180-day time period, the court "shall enter an order dismissing the same with prejudice."  (§ 1389, art. V, subd. (c).)  The 180-day time period described in article III, subdivision (a) does not commence, however, until the person's request for final

---

that this claim is subject to forfeiture due to trial counsel's failure to pursue it below, the Attorney General does not argue forfeiture, and we may exercise our discretion to consider forfeited issues.  (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)

[9] Alternatively, under article IV of the Detainer Agreement, a receiving state prosecutor who has filed a detainer "can have [the prisoner] made available by presenting to the officials of the State in which the prisoner is incarcerated 'a written request for temporary custody or availability.' "  (*Mauro*, *supra*, 436 U.S. at pp. 351-352; § 1389, art. IV, subd. (a).)  On such a request, "trial shall be commenced within [120] days" of the defendant's arrival in the receiving State" unless good cause is shown and a continuance is granted.  (§ 1389, art. IV, subd. (c).)  Here, the District Attorney did make such a request for temporary custody with the Colorado warden.  For the first time at oral argument, the Attorney General argued that a receiving state, by requesting temporary custody under article IV, effectively terminates all obligations under article III.  Our holding here does not require our consideration of this novel argument.  (See *United States v. Kurt* (9th Cir. 1991) 945 F.2d 248, 251 [Detainer Agreement procedures protect against "prosecutorial abuses of the detainer" but include the provisions of article IV, "[s]hould the prisoner fail to make an article III request"].)

disposition has been delivered to the appropriate court and prosecuting officer of the jurisdiction that lodged the detainer.  (*Fex v. Michigan* (1993) 507 U.S. 43, 52 (*Fex*).)

## C.    *Breach of Duty to Promptly Inform*

In contrast to his argument before the magistrate, Nguyen on appeal acknowledges that the Detainer Agreement's 180-day time limit did not commence until December 21, 2018, when the District Attorney received his request for final disposition of his charges. (See *Fex*, *supra*, 507 U.S. at p. 52 [180-day time limit begins when prosecuting office receives request].)  Accordingly, Nguyen concedes that the District Attorney ordinarily would have until June 19, 2019—two weeks *after* the magistrate dismissed the complaints—to bring Nguyen to trial under article III, subdivision (a).[10]  Nguyen argues, however, that he may nonetheless be entitled to dismissal of the charges if the Colorado warden's as-yet unexplained delay of 14 weeks before informing Nguyen of the detainer was unreasonable; he therefore asserts that it was error for the trial court to reinstate the complaints without a hearing on the reasons for delay.  In view of the prevailing federal interpretation of the Detainer Agreement, we conclude that even an unreasonable breach by the Colorado warden of the article III duty to promptly inform Nguyen of the detainer would not entitle him to dismissal.

Federal courts have consistently precluded dismissal as a form of relief when there has been a violation of the Detainer Agreement's article III notice provision, whether due to a failure to promptly notify a defendant of a detainer or a failure to notify a defendant of his or her right to request a final disposition of a detainer. (*United States v. Lualemaga* (9th Cir. 2002) 280 F.3d 1260, 1264-1265 (*Lualemaga*); *United States v. Walker* (8th Cir.

---

[10] Likewise, Nguyen acknowledges that the 120-day time limit described in section 1389, article IV, subdivision (c) began when he was transported to Santa Clara County on March 4, 2019.  Thus, he concedes that the prosecutor would have been required to bring Nguyen to trial by July 2, 2019, about a month *after* the magistrate dismissed the complaints under the Detainer Agreement.

2001) 255 F.3d 540, 543; *United States v. Robinson* (6th Cir. 2006) 455 F.3d 602, 606; *United States v. Pena-Correa* (11th Cir. 1999) 165 F.3d 819, 821-822.) Although we are not bound by the decisions of the federal circuit courts or district courts on questions of federal law, " 'they are persuasive and entitled to great weight. [Citation.] . . . [W]here the decisions of the lower federal courts on a federal question are "both numerous and consistent," we should hesitate to reject their authority [citation].' " (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58, fn. omitted.)

*Lualemaga* is instructive. There, the defendant was incarcerated in state prison when the federal government lodged a detainer that failed to notify the defendant of his right to request a final disposition. (*Lualemaga*, *supra*, 280 F.3d. at p. 1262.) Consistent with the erroneous statement in the federal detainer, the state warden failed to inform the defendant under article III, subdivision (c) of the Detainer Agreement that he had the right to request a final disposition of his federal charges. (*Lualemaga*, *supra*, 280 F.3d. at p. 1262.) More than 180 days later, the defendant unsuccessfully moved to dismiss the federal indictment under the Detainer Agreement. (*Ibid.*)

The Ninth Circuit affirmed the judgment, determining that although the warden had "indisputably violated" the requirement of prompt notice, dismissal of the charging document was not an appropriate remedy for the failure of notice. (*Lualemaga*, *supra*, 280 F.3d at p. 1263.) The court explained that the Detainer Agreement mandates dismissal of a charging document in only three enumerated circumstances: (1) if the receiving state returns the defendant to the sending state before completion of trial (§ 1389, art. IV, subd. (e))[11]; (2) if the receiving state fails to accept temporary custody of the defendant after filing a detainer (§ 1389, art. V, subd. (c)); and (3) if the defendant is not brought to trial within 180 days of a State receiving a defendant's formal request or

---

[11] The United States ratification of the Detainer Agreement is codified at 18 U.S.C. Appen. 2, § 2. We cite to the California codification for consistency.

within 120 days of the defendant's arrival in a receiving state that requested temporary custody (§ 1389, arts. III, subd. (a); IV, subd. (c); V, subd. (c)). (*Lualemaga*, *supra*, 280 F.3d at pp. 1263-1265.) In contrast, the Detainer Agreement's silence as to a remedy for violation of the notice requirement of article III, subdivision (c), suggests that dismissal is not contemplated. (*Lualemaga*, *supra*, at p. 1264.) The court further noted that several other circuits had concluded that the Detainer Agreement's "enumerated list of circumstances requiring dismissal [of a charging document] is exclusive." (*Id.* at p. 1264.)

Distinguishing between errors made between the sending state and the receiving state, the Ninth Circuit further observed that if the violation there had been solely attributable to the sending state, "it would not be fair to penalize the receiving [s]tate" for the sending state's negligence. (*Lualemaga*, *supra*, 280 F.3d at p. 1264.) The court nonetheless went on to hold that a "dismissal of an indictment is not an available form of relief where the notice requirement of the [Detainer Agreement] is violated" either by the sending or the receiving state. (*Id.* at p. 1265).

We agree the Detainer Agreement's purpose—"to promote the expeditious resolution of detainers"—may be "easily frustrated if the sending state is not held to its obligation[s]" under the agreement. (*People v. Wilson* (1977) 69 Cal.App.3d 631, 638 (*Wilson*).) If the sending state does not fulfill its obligations to promptly inform a defendant of a detainer and his or her right to a final disposition, a defendant's rights under the Detainer Agreement might never mature. (*Ibid.*) In *Fex*, however, the United States Supreme Court summarily dismissed similar policy considerations to hold in a divided opinion that article III's 180-day time limit did not begin until a defendant's request has actually been delivered to the appropriate authorities: "Petitioner's 'fairness' and 'higher purpose' arguments are . . . more appropriately addressed to the legislatures of the contracting States, which adopted the [Detainer Agreement's] text." (*Fex*, *supra*, 507 U.S. at p. 52.) In the majority's view, the hypothetical "negligence[,] . . . even

9

malice" of a sending state's warden would be "bad" but "no worse than what regularly occurred before the [Detainer Agreement] was adopted." (*Id.* at pp. 49-50.)

Nguyen relies on *Wilson*, *supra*, 69 Cal.App.3d 631 for the proposition that he should at least be entitled to a hearing on the reasonableness of the Colorado warden's delay. *Wilson*, decided well before *Fex*, addressed a sending state's delay in duly communicating a prisoner's request to final disposition to the receiving state under article III of the Detainer Agreement. (*Wilson*, *supra*, 69 Cal.App.3d. at p. 634.) Upon serving notice of a detainer and receiving the defendant's request to file a formal demand for disposition of the charges, the prison's legal department took two months to forward his request to the District Attorney. (*Id.* at p. 634.) The defendant's sole obligation under the Detainer Agreement being "to advise the warden of his request for final disposition," the defendant in *Wilson* satisfied that requirement when he initially made his request for disposition to the correctional facility. (*Id.* at pp. 636-637.) As the warden was required to "promptly forward" the defendant's request to the appropriate prosecuting official, *Wilson* concluded that the defendant may be entitled to a dismissal because article V, subdivision (c) mandates dismissal of the charging document if a defendant is not brought to trial within the 180-day period prescribed in article III. (*Wilson*, *supra*, at p. 637.) The Court of Appeal in *Wilson* remanded for a hearing as to the reasonableness of the sending state's two-month delay in sending the formal request for disposition. (*Id.* at p. 637.) If the two-month delay was "unreasonable[,] then the prison officials have failed to meet their statutory duty" under the Detainer Agreement. (*Id.* at p. 638.)

Even assuming *Wilson*'s continuing viability post-*Fex*, it is distinguishable from *Lualemaga* because *Wilson* concerned a correctional facility's delay in processing the request by a duly notified defendant for final disposition of his pending charges. (*Wilson*, *supra*, 69 Cal.App.3d at pp. 634, 636-637.) Here, as in *Lualemaga*, the delay in

10

Nguyen's case occurred before—in fact prevented—his article III request.[12]  From Nguyen's perspective, the distinction we observe is without a difference, but on a question of federal law, we may not lightly disregard the uniform federal authorities squarely precluding dismissal as a remedy for a failure to abide to the Detainer Agreement's requirement of prompt notice of a detainer.  To remand the matter to permit a hearing to determine the reasonableness of the delay would serve no purpose under the Detainer Agreement, given the text's omission of a remedy for the breach of ministerial duty here at issue.

Nguyen also relies on *Netzley*, *supra*, 160 Cal.App.4th 348, which adopted *Wilson*'s reasonableness test to determine whether a defendant's unavailability to stand trial due to being placed in a disciplinary segregation unit tolled the time limits described under the Detainer Agreement.  (*Id.* at pp. 351, 357-358; § 1389, art. VI, subd. (a) [180-day time limit "shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter"].)  In *Netzley*, the Court of Appeal reasoned that "delays occasioned by the warden's negligence, willful misconduct, or unreasonable delays should not serve to toll the 180-day time limit."  (*Id.* at p. 357.)  But the operative delay in *Netzley* occurred after the prosecutor in the receiving state had received the defendant's formal demand for final resolution, and accordingly after the 180-day time limit had begun.  The issue in *Netzley* was whether the warden reasonably made the defendant unavailable for timely trial in the receiving state by placing the defendant in disciplinary segregation.  (*Id.* at p. 357.)  Here, any delay caused by the Colorado warden was made before Nguyen made a request for final

---

[12] None of the parties argue that Nguyen's predetainer informal request started the running of any time period prescribed in the Detainer Agreement.  (See *People v. Lavin* (2001) 88 Cal.App.4th 609, 616-617; *People v. Cella* (1981) 114 Cal.App.3d 905, 917 [informal requests do not activate the provisions of article III].)

11

disposition and before the 180-day time limit commenced upon the District Attorney's receipt of Nguyen's request for final disposition. (See *Fex*, *supra*, 507 U.S. at p. 52.)

Nguyen argues that dismissal must be an appropriate remedy for *any* untimeliness because the Detainer Agreement requires dismissal when the charges have not been tried "within the period provided" in articles III and IV. (§ 1389, art. V, subd. (c).) Unlike the 180 days specified by article III and the 120 days by article IV, however, "promptly" is not a "period," as Nguyen implicitly recognizes in his suggestion that we redefine "prompt" as within 15 days. And as Nguyen has conceded, the 180-day period set forth in article III and the 120-day period set forth in article IV had not yet expired when the magistrate dismissed the complaints.

For these reasons, we conclude that because dismissal of the complaints is not an available form of relief under the circumstances of this case, a remand for a hearing on the reasons or reasonableness of Colorado's delay would serve no purpose here. (See *Lualemaga*, *supra*, 280 F.3d at pp. 1263-1265.) Accordingly, the magistrate's dismissal of the complaints was erroneous as a matter of law, and the superior court properly ordered the magistrate's reinstatement of the complaints under section 871.5. (See *Shrier*, *supra*, 190 Cal.App.4th at pp. 409-410.)

## III.    DISPOSITION

The judgment is affirmed.

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

WILSON, J.

*People v. Nguyen*
H047893

| | |
|---|---|
| Trial Court: | Santa Clara County<br>Superior Court Nos.:  C1910627,<br>C1652927, C1766436 |
| Trial Judge: | The Honorable Socrates Peter Manoukian |
| | The Honorable Daniel T. Nishigaya |
| Attorney for Defendant and Appellant<br>Quoc Ai Nguyen: | Matthew J. Watts<br>under appointment by the Court<br>of Appeal for Appellant |
| Attorneys for Plaintiff and Respondent<br>The People: | Rob Bonta<br>Attorney General |
| | Lance E. Winters,<br>Chief Assistant Attorney General |
| | Charles C. Ragland,<br>Senior Assistant Attorney General |
| | Warren J. Williams,<br>Deputy Attorney General |

*People v. Nguyen*
H047893