Patrick K. GIBSON, Plaintiff and Appellant,

v.

Larry MORRIS, Warden, Utah State Prison, Defendant and Respondent.

No. 17943.

Supreme Court of Utah.

May 10, 1982.

---

Joseph C. Fratto, Jr., Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for defendant and respondent.

OAKS, Justice:

This appeal from the denial of habeas corpus relief under Utah R.Civ.P. 65B(f) requires us to clarify an apparent conflict in (1) the procedures to be followed when another state desires to obtain custody of a Utah prisoner for trial in that state under the Interstate Agreement on Detainers, U.C.A., 1953, § 77–29–5 *et seq.* (Supp.1981), and (2) the arrangements under which Utah provides institutional confinement for prisoners from other states under the Western

Interstate Corrections Compact, U.C.A., 1953, § 77–28–1 *et seq.* (Supp.1981).

In 1979, an Oregon court sentenced appellant to a 25-year term for robbery and rape. In 1980, appellant was transferred to Utah for confinement in the Utah State Prison under the Corrections Compact. In the spring of 1981, California, proceeding under the Agreement on Detainers, filed a detainer with Utah prison authorities seeking temporary custody of appellant to try him on kidnapping and rape charges pending in California. After the Governor of Utah declined to disapprove this request for temporary custody (pursuant to the authority conferred in Article IV(a) of the Agreement on Detainers, § 77–29–5), appellant brought this petition for habeas corpus in our district court, challenging the legality of his proposed temporary transfer to California.[1] The writ was denied and appellant took this appeal.

We agree with appellant's contention that California's request for his temporary custody under the Agreement on Detainers should have been addressed to the appropriate authorities in Oregon, since Utah, under the Corrections Compact, had no authority to transfer appellant into the temporary custody of another state without Oregon's direction or approval.

The Corrections Compact was adopted by Utah in 1959. Its constitutionality has been sustained both as to prisoners Utah received from other states, *Crawford v. Smith*, Utah, 578 P.2d 1282 (1978), and as to Utah prisoners sent to other states. *Ringo v. Turner*, 16 Utah 2d 298, 400 P.2d 15 (1965). Its purpose is to improve the range of institutional facilities, confinement, treatment, and rehabilitation programs available for offenders incarcerated by its member states. § 77–28–1, Art. I.

The Corrections Compact is implemented by contracts under which, for an agreed

---

1. We have held that a prisoner whose liberty is constrained in another state by a detainer filed by Utah can challenge the legality of that detainer by habeas corpus in this state. *Hearn v. State*, Utah, 621 P.2d 707 (1980). *A fortiori,* a prisoner incarcerated in Utah can use our habeas corpus remedy to challenge the effect in Utah of a detainer filed by another state or a proposed transfer of custody pursuant thereto.

payment, a "receiving" state provides confinement for an inmate of a "sending" state, "the receiving state to act in that regard solely as agent for the sending state." § 77–28–1, Art. IV(a). The meaning of that agency relationship is explained as follows:

> Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state . . . .

§ 77–28–1, Art. IV(c). Succeeding provisions assure inmates, during their confinement in the receiving state, the continued benefit of all laws and procedural rights of the sending state. If hearings are held in the receiving state, "the governing law shall be that of the sending state" and in all such proceedings "the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state." § 77–28–1, Art. IV(f). The decisions of the sending state in respect to an inmate are conclusive upon and not reviewable by the receiving state. § 77–28–1, Art. V.

◼ The foregoing provisions of the Corrections Compact make it evident that the officials of a receiving state have no authority to make any change in the custody of a prisoner received under the Compact without the direction or approval of the sending state.

◼ The only question remaining is whether the Agreement on Detainers, adopted by Utah in 1967, dictates a different result. So far as we are aware, there are no direct precedents on this question. However, we have recently held that "[t]he remedial purposes of the Interstate Agree-

ment on Detainers should not be frustrated by technicalities unrelated to its purpose of facilitating the speedy trial or other resolution of charges pending against prisoners incarcerated in other jurisdictions." *Hearn v. State*, Utah, 642 P.2d 757, (1982). Our decision must be consistent with that principle.

The Agreement on Detainers also speaks of the "receiving state" (where charges are pending) and the "sending state," which it defines as "a state in which a prisoner is incarcerated . . . ." § 77–29–5, Art. II(b) and (c). The speedy trial remedy under the Agreement on Detainers, which specifies a time within which a prisoner must be turned over to the receiving state and brought to trial on its pending charges, is set in motion either by a detainer and written request from the receiving state or by a request from a prisoner against whom the receiving state has lodged a detainer. In either case, the "official having custody of the prisoner" must provide the prosecutor or other appropriate official in the receiving state with a certificate "stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." § 77–29–5, Arts. III(a) and IV(b).

◼ A state which has received a prisoner under the Corrections Compact, such as Utah in this case, cannot provide the information required to implement the Agreement on Detainers. Neither would it be appropriate for the governor of a state which has received a prisoner under the Corrections Compact to conduct the pre-transfer review or exercise the discretionary authority conferred by the Agreement on Detainers, § 77–29–5, Art. IV(a), to "disapprove the request for temporary custody or availability . . . ."[2] That decision should be made by the chief executive of the state of conviction, which, under the Corrections Compact, has the sole authority to direct the prisoner's custody. § 77–28–1, Art. IV.

---

**2.** Except where the prisoner has requested trial on the detainer charges, this pre-transfer hearing is a right guaranteed by federal law. *Cuy-*

*ler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

For purposes of the receipt of detainers and requests and the giving of notice and certificates, the Agreement on Detainers speaks of "the appropriate official having custody of the prisoner," § 77–29–5, Art. III(a), the "warden, commissioner of corrections or other official having custody of the prisoner," § 77–29–5, Art. III(c), "the appropriate authorities of the state in which the prisoner is incarcerated," § 77–29–5, Art. IV(a), "the appropriate authorities having the prisoner in custody," § 77–29–5, Art. IV(b), and the like. In view of the express provision that "[t]his agreement shall be liberally construed so as to effectuate its purposes," § 77–29–5, Art. IX, and in view of the practical necessity of having the sending state under the Corrections Compact make the decisions and provide the essential information as to prisoners held in another state, we read the foregoing references in the Agreement on Detainers in light of the agency relationship defined in the Corrections Compact.

In view of the principal-agent relationship between Oregon and Utah in the instant case, a reference in the Agreement on Detainers to a request (California's) for temporary custody submitted to the "state in which the prisoner is incarcerated," § 77–29–5, Art. IV(a), could be satisfied by submission to the prison authorities in Utah. In that event, the prison officials in Utah would receive California's request only as agents for the appropriate authorities in Oregon. But only the principal, the authorities in Oregon, would qualify as the "appropriate authorities having the prisoner in custody," § 77–29–5, Art. IV(b) (*i.e.*, subject to their direction), who could furnish the certificate of the prisoner's status and authorize his release into the temporary custody of California.

The state argues that the Corrections Compact should not be used to defeat the purpose of the Agreement on Detainers.

Our construction does not defeat that purpose. Once the ambiguity treated in this case is settled, a state in the position of California can make its request to Oregon authorities just as easily as to a Utah warden. In contrast, if Utah were permitted to release a prisoner in the position of this appellant to another state without the participation, direction, or approval of the principal, which is the sending state under the Corrections Compact, its action would negate the agency relationship created by that Compact.

If California is to obtain custody of appellant, it must have the approval of the Oregon authorities, which it may seek directly or by having its request forwarded by the prison officials in Utah. The further questions of legality and discretion appellant seeks to raise in this case should be addressed to the Oregon authorities.[3]

The judgment of the district court is reversed and the case is remanded with instructions to grant appellant relief in accordance with this opinion. *So ordered.*

HALL, C. J., and STEWART, HOWE and DURHAM, JJ., concur.

---

**3.** Appellant contends that it is illegal for California to put him to trial at this time on charges that arose out of the same course of criminal conduct for which he has already been tried in the federal and state courts in Nevada under earlier detainers. These questions being unnecessary to our disposition of this case, we express no opinion on them.