**James Willard HEARN, Plaintiff and Appellant,**

v.

**STATE of Utah, Defendant and Respondent.**

No. 17620.

Supreme Court of Utah.

March 4, 1982.

James Willard Hearn, pro se.

David L. Wilkinson, Atty. Gen., Robert N. Parrish of the Atty. Gens. Office, Salt Lake City, for defendant and respondent.

OAKS, Justice:

In this petition for habeas corpus, a federal prisoner challenges the legality of a detainer Utah has filed with federal prison authorities to assure that he will be returned to serve a Utah sentence following the completion of his federal confinement. The prisoner, appellant in this case, contends that because he commenced serving his Utah sentence before he was transfer-

red to the custody of the authorities of another state, Utah cannot later compel him to serve the remainder of the Utah sentence. To justify his use of habeas corpus to challenge Utah's action, appellant contends that he is "restrained" by the Utah sentence and detainer because they are detrimental to his attempts to secure parole from the federal prison.

In *Hearn v. State*, Utah, 621 P.2d 707 (1980), we held that our district court had jurisdiction to consider this petition for habeas corpus. On remand, in a proceeding in which appellant was represented by counsel, the court denied relief on the merits. In this appeal, we are called upon to construe the effect of the Interstate Agreement on Detainers, Utah Code Annotated, 1953, § 77–29–5, *et seq.*, in the unusual circumstances of this case.

While appellant was serving a sentence in the Washington State Penitentiary, he was brought to Utah under the Interstate Agreement on Detainers to face charges of armed robbery in this state. After conviction of that offense, he was given a 25-year sentence on October 27, 1970, and taken directly to the Utah Penitentiary to commence serving it. The Utah authorities apparently overlooked the fact that the Interstate Agreement requires that the receiving state house a prisoner received under the Agreement in a jail or other facility regularly used for persons awaiting prosecution and return him to the sending state immediately after his trial. U.C.A., 1953, § 77–29–5, Article V(d) and (e).

On December 21, 1970, in response to a Washington request that apparently reminded the Utah authorities of their obligations under the Agreement, Utah returned appellant to Washington State, subject to a detainer to return him to complete his Utah sentence after he had completed his sentence there. Thereafter, a federal court in Washington State convicted appellant of bank robbery. In April, 1976, appellant was sent to the United States Penitentiary in Marion, Illinois, where he is still serving his federal sentence. Utah sent that institution a detainer, which appellant challenges in this proceeding.

Appellant makes no allegations touching the validity of his Utah conviction. His sole contention is that because he commenced serving his Utah sentence before he was returned to Washington State, he cannot later be compelled to serve the balance of his Utah sentence, and any detainer directed to that end is illegal.

Appellant cites *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967), and *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930), for the proposition that a prisoner cannot be required to serve his sentence in installments. These were both cases where the state of original confinement (the "sending state") relinquished custody to another state for trial and confinement without detainer to assure the prisoner's return to complete his original sentence. Then, 18 years after the prisoner's unconditional release from the second confinement in one case and 2 years in the other, the sending state sought to have the prisoner serve out the full period remaining on his original sentence. Noting that this procedure could interrupt a prisoner's opportunity to re-establish himself in society and that in the circumstances of these cases (where no detainer had been placed by the sending state) the prisoner's release to the receiving state amounted to a waiver of jurisdiction, these courts ordered the prisoner released from renewed confinement under the first sentence. As subsequent cases have noted, these precedents are obviously distinguishable from cases (like this appellant's) where a prisoner is being called upon to serve consecutive sentences in the different jurisdictions, with detainers placed to assure continuous incarceration. *Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973); *Mills v. Beto*, 477 F.2d 124 (5th Cir. 1973), cert. denied, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973).

Also distinguishable are cases like *Thompson v. Bannan*, 298 F.2d 611 (6th Cir. 1962), and others cited therein, which refer to an implied pardon, a commutation of sentence, or a waiver of jurisdiction when a prisoner serving a sentence in one state is surrendered to another state. The ration-

ale of those authorities is superseded by the detailed provisions of the Interstate Agreement on Detainers, discussed below. The more recent authorities find no implied pardon, commutation, or waiver in this circumstance. E.g., *Helm v. Jago*, 588 F.2d 1180 (6th Cir. 1979); *Mills v. Beto, supra.*

The Interstate Agreement on Detainers was recommended to the various states in 1957, was adopted in Utah in 1967, and is now in force in the federal jurisdiction and 46 states.[1] The remedial purpose of that Agreement was "to encourage the expeditious and orderly disposition" of charges outstanding against a person imprisoned in another jurisdiction. U.C.A., 1953, § 77–29–5, Article I. The Agreement is to be "liberally construed so as to effectuate its purposes." *Id.* at Article IX. Those remedial purposes would be frustrated if the sentences imposed in the successive proceedings facilitated by that Act could not be served consecutively. Moreover, if confinement under one sentence could not be interrupted temporarily for the trial of another charge, the Act could not be implemented.

The Interstate Agreement provides that the time being served in the sending state continues to run during the temporary custody necessary to make the prisoner available for trial in the receiving state. U.C.A., 1953, § 77–29–5, Article V(f). But the Agreement contains no provision requiring that the time imposed in the receiving state begin to run as soon as sentence is passed or that the time run continuously from the original confinement in the penitentiary of the receiving state. In *Stroble v. Egeler*, 408 F.Supp. 630, 635–36 (E.D.Mich.1976), remanded on other grounds, 547 F.2d 339 (6th Cir. 1977), vacated on other grounds, 587 F.2d 830 (6th Cir. 1978), the court held that the "technical violation" of a two-month incarceration in the penitentiary of the receiving state did not preclude that state from compelling a prisoner to complete his sentence after his release by the sending

state. To the same effect is *Saunders v. State*, Del., 397 A.2d 548 (1979), which denied habeas corpus relief to a prisoner who had been shuttled back and forth by means of detainers, and ultimately required to serve a state sentence in advance of a previously imposed federal sentence.

The remedial purposes of the Interstate Agreement on Detainers should not be frustrated by technicalities unrelated to its purpose of facilitating the speedy trial or other resolution of charges pending against prisoners incarcerated in other jurisdictions. As Judge Joiner held in *Stroble v. Egeler*, 408 F.Supp. at 636, "The signatories to the Agreement did not intend to let technical violations operate to release duly convicted prisoners from serving the balance of their sentences . . . ."

The standard to which administration of the Interstate Agreement on Detainers should be held is substantial compliance with the terms of the Agreement and fundamental fairness in the overall result. Pursuant to that standard, we find no variation from substantial compliance with the terms of the Agreement and no violation of fundamental fairness in the fact that appellant's service of sentence in the receiving state was interrupted for his return to the sending state and will be resumed, pursuant to detainer from the receiving state, once he completes service of his sentence in the sending state and a federal sentence that has intervened.

Appellant not having stated any basis for relief by habeas corpus or postconviction relief, the district court's order dismissing his petition is affirmed.

HALL, C. J., and STEWART, HOWE and DURHAM, JJ., concur.

---

1. The history is discussed in *United States v. Mauro*, 436 U.S. 340, 349–51, 98 S.Ct. 1834, 1841–42, 56 L.Ed.2d 329 (1978).