THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DOUGLAS CHRISTENSEN, Defendant-Appellee.

Fourth District   No. 4—82—0248

Opinion filed April 6, 1983.

Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of Springfield, for the People.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's

Office, of Springfield, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The defendant was brought to Illinois from a Federal prison in Texas, where he was serving a 12-year sentence, to stand trial on a 15-count indictment. Because an important witness had disappeared in the meantime, however, the State nol-prossed the indictment and returned the defendant to Federal custody. When the witness was found, the State obtained a new indictment charging the same offenses as before and brought the defendant to Illinois again; both times the State used the Agreement on Detainers (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a)) to compel the defendant's presence. Finding that the defendant had been in custody more than 120 days, a violation of section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5), and that he was returned to Federal custody without having been tried on the first indictment, a violation of article IV(e) of the Agreement (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. IV(e)), the trial court discharged the defendant and dismissed the charges with prejudice. The State appeals, and we reverse and remand.

The defendant was indicted by a Woodford County grand jury July 24, 1980, in cause No. 80-CF-80 on 10 counts of murder, two counts of involuntary manslaughter, two counts of aggravated battery, and one count of concealment of a homicidal death, all stemming from the death of Walter Gardner on December 14, 1979. The prosecutor filed a detainer against the defendant at a Federal prison in Texas where the defendant was serving a sentence on an unrelated Federal charge. The State obtained custody of the defendant under the Agreement on Detainers, which both the United States and Illinois have adopted. The defendant was received in Woodford County October 19, 1980. On December 19, 1980, defendant was granted a continuance and the trial was continued to February 17, 1981, when the State was granted a continuance because an important witness could not be found; the trial was rescheduled for April 6, 1981.

The defendant was never tried on the indictment in 80-CF-80. On March 17, 1981, the State nol-prossed the indictment because the witness still could not be found. The prosecutor explained:

"Then I would move at this time to dismiss the case and make it perfectly clear on the record that it would be the People's intention to renew charges that are the substance of this case. If it is in another file or indictment, so be it, but it would be the People's intention to renew those charges if the witness *** be-

comes available."

The trial judge dismissed the indictment and signed what was designated a "Nolle Pros Order"; he also signed an order remanding the defendant to Federal custody.

The defendant was indicted in the present case, cause No. 81-CF-83, October 29, 1981. Once again the defendant was charged with 10 counts of murder, two counts of involuntary manslaughter, two counts of aggravated battery, and one count of concealment of a homicidal death, all stemming from the death of Walter Gardner December 14, 1979. As before, the State obtained custody of the defendant under the Agreement on Detainers, and he was brought to Illinois April 9, 1982. The trial court heard the defendant's motion to dismiss on April 16, 1982. Agreeing with the defendant that both the speedy-trial provisions of section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5) and the Agreement on Detainers had been violated, the trial court dismissed the charges.

## I

■■ ■ The speedy-trial provision of section 103—5(a) applies only to persons "in custody in this State" (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a)); thus, the time when the defendant was not in Illinois does not count toward the 120-day period allowed by that section. The record shows that in cause No. 80-CF-80 and in cause No. 81-CF-83, taken together, the defendant was in custody in Illinois fewer than 120 days, after deducting the delay chargeable to him by his motion for a continuance in cause No. 80-CF-80. Thus, even if the two indictments are considered a continuing prosecution, which would require that the speedy-trial clock be tolled and then resumed rather than begun anew (*People v. Sanders* (1980), 86 Ill. App. 3d 457, 407 N.E.2d 951), the defendant's right under section 103—5(a) to a speedy trial was not violated.

## II

The trial court also found that article IV(e) of the Agreement on Detainers (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. IV(e)) barred prosecuting the defendant in 81-CF-83. That provision says:

> "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Article V(e) says:

"At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. V(e).)

The trial court believed that the indictment in 80-CF-80 should have been dismissed with prejudice because the defendant was not tried on it before being returned to Federal custody.

■■■ We conclude that article IV(e) does not bar prosecuting the defendant. The decision to nol-pros a charge is within the prosecutor's discretion, and a trial court may not deny the motion in normal circumstances. (*People ex rel. Castle v. Daniels* (1956), 8 Ill. 2d 43, 132 N.E.2d 507; *Sanders.*) In this case, the prosecutor was without a witness and did not know when he would be found; the record contains no evidence or sign that the prosecutor made the motion to harass the defendant or to evade any of the applicable speedy-trial provisions.

The nol pros of the indictment meant that the defendant was not then facing any charges in Illinois. Thus, after the defendant was returned to Federal custody, the trial court could not enter the order contemplated by article IV(e)—a dismissal of the indictment with prejudice. No indictment existed, so none could be dismissed. The defendant was then charged in a new indictment, 81-CF-83. Although based on the same offenses as the indictment in 80-CF-80, 81-CF-83 was a new case. Accepting the defendant's argument that article IV(e) requires dismissal of the charges with prejudice would limit the prosecutor's discretion in deciding to nol-pros charges; the Agreement on Detainers was not designed with that purpose in mind. The Agreement provides a procedure that Illinois may use to prosecute persons who are in the prisons of States that have adopted it. The Federal government has adopted the Agreement (18 U.S.C. app., at 1395 (1976)) and is defined as a "state" (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. II(a)).

Article I of the Agreement on Detainers says in part:

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indict-

ments, informations or complaints." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. I.)

The Agreement is also intended to provide "cooperative procedures" for the orderly transfer and trial of prisoner-defendants. Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. I.

Nol-prossing the indictment in 80-CF-80 and bringing the defendant back to Illinois a second time under a different indictment, 81-CF-83, has not frustrated the purposes expressed in article I of the Agreement. When the defendant was returned to Federal prison in Texas after the nol pros, the charges were no longer outstanding; although the prosecutor explained that he had had difficulty in convincing the warden in the Federal prison that the detainer had been recalled, the detainer was not then "based on untried indictments, informations or complaints" (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. I).

Article IV(e) of the Agreement and a corresponding provision in article III(d) (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. III(d)) deter authorities from shuttling prisoner-defendants between the sending State—the original place of imprisonment—and the receiving State—the State where the defendant is to be tried. Once the first indictment was nol-prossed, the State no longer had the authority to require the defendant to remain in Illinois; the record does not show any outstanding charges against the defendant at that time. Furthermore, although the prosecutor expected that the defendant would be indicted again for the same offenses, he did not know when that would happen; besides being unlawful, keeping the defendant in Illinois during that time would have interfered with his "programs of prisoner treatment and rehabilitation" (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a), art. I) in the Federal prison in Texas (*People v. Dye* (1977), 69 Ill. 2d 298, 371 N.E.2d 630; *Neville v. Friedman* (1977), 67 Ill. 2d 488, 367 N.E.2d 1341).

In *Neville,* the defendant was brought to Sangamon County, where several indictments against him were pending, from a Federal prison in Terre Haute, Indiana; custody of the defendant was obtained under the Agreement on Detainers. The trial court granted defense counsel's motion for a continuance and continued the matters for 2½ months, when a new trial date would be scheduled. The defendant was then returned to the Federal prison in the meantime; he later moved to dismiss the indictments, relying on article IV(e) of the Agreement on Detainers. The circuit court denied the motion and the supreme court granted the defendant leave to file in that court an original action for a writ of prohibition. Carefully considering the pur-

poses of the Agreement on Detainers, the supreme court denied the petition. The court said:

"It seems entirely clear to us that petitioner's continued detention in the Sangamon County jail for an additional period of 2½ or more months would [have] substantially interfere[d] with the Federal prisoner-treatment and rehabilitation programs which were employed at Terre Haute. Such interference is not in the best interests of petitioner, for whose benefit the programs are designed, ·nor of a society interested in the rehabilitation of its offending members. By contrast, we can discern no useful purpose to be accomplished by holding petitioner in the Sangamon County jail during that period, and he does not argue that any exists." 67 Ill. 2d 488, 493-94, 367 N.E.2d 1341.

Our decision here similarly carries out rather than frustrates the purposes of the Agreement on Detainers. Having concluded that neither section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5) nor the Agreement on Detainers (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9(a)) has been violated, we reverse the decision of the trial court and remand the case for further proceedings.

Reversed and remanded.

WEBBER, P.J., and MILLS, J., concur.