[No. D003951. Fourth Dist., Div. One. July 21, 1986.]

WILLIAM SAM MARSHALL, Petitioner, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Max Foster Ruffcorn for Petitioner.

No appearance for Respondent.

Thomas W. Storey, District Attorney, for Real Party in Interest.

**OPINION**

**WORK, J.—**

I

William Sam Marshall seeks a writ of prohibition to prevent further prosecution of murder charges against him on the ground his right to speedy trial under the Agreement on Detainers (hereinafter referred to as IAD), Penal Code section 1389, has been denied. He relies on article III, subdi-

visions (a) and (d) of that act. Subdivision (a) gives a "person [who] has entered upon a term of imprisonment in a penal or correctional institution of a party state" the right to demand a trial within 180 days of his properly delivered written request for final disposition of matters as to which a detainer has been lodged against him from another state. Subdivision (d) states that when a prisoner who has made such a request is transferred to the "receiving state" for disposition of pending charges, if he is not tried on the pending charges before being returned to the original place of custody, proceedings in the receiving state must be dismissed with prejudice.[1]

■ The purposes of the IAD are to expedite disposition of untried criminal matters in one jurisdiction affecting a prisoner in another jurisdiction, both to protect the prisoner's speedy trial rights as to such untried matters and also to minimize the interruption of his rehabilitative incarceration. (See, e.g., *People* v. *Cella* (1981) 114 Cal.App.3d 905, 916, 920-921 [170 Cal.Rptr. 915].)

---

[1]The pertinent portions of the statute in full provide:
"Section 1389:
". . . . . . . . . . . . . . . . . . . . . . .
"Article III
"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have cause to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.
". . . . . . . . . . . . . . . . . . . . . . .
". . . . . . . . . . . . . . . . . . . . . . .
"(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

In order to come within the terms of the IAD, a person must be a prisoner who has "entered upon a term of imprisonment . . . ." (Pen. Code, § 1389, art. III, subd. (a).) That language has been uniformly construed to refer only to convicted prisoners, not to pretrial detainees.

■ For reasons we shall discuss more fully, because Marshall was serving a term of imprisonment in Texas when he was brought to California pursuant to his demand under the IAD to be tried within 180 days, the statute has been violated, and dismissal with prejudice is mandatory.

## II

The Imperial County Superior Court issued a warrant of arrest for Marshall on murder charges (Pen. Code, § 187). Marshall was located in Florida, but before he could be extradited here, was transferred to Texas where he was indicted for a different murder. The district attorneys in Harris County, Texas and in Imperial County, and Marshall began negotiating a possible concurrent disposition of the murder charges in both states.

On April 27, 1984, Marshall was convicted in Texas of an unrelated felony, aggravated assault, and commenced serving a four-year prison term, with credit for time served since November 1, 1983.

On May 11, 1984, Marshall and his Texas attorney signed an understanding with the district attorneys in Texas and California regarding the pending murder charges in both jurisdictions. Its terms were as follows: (1) Marshall agreed to plead guilty to one count of murder in Texas, stipulated to a life term of imprisonment, and agreed to waive extradition to California; (2) the Texas murder term would be served in California and run concurrent to any terms imposed here; (3) Marshall further agreed to plead guilty in California to one count of first degree murder, with stipulated punishment of 25 years to life. The agreement recited, "It is the intent of all parties concerned that the defendant is to plead guilty to murder in Texas and in California and to serve his term of imprisonment in the California prison system."

On June 5, 1984, the Texas Department of Corrections served Marshall with a formal "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition" prescribed by the Agreement on Detainers relating to the pendency of the untried California murder charge. Marshall responded by mailing to the District Attorney in El Centro on August 20, 1984, the "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, . . ." That form constituted a request for a timely disposition of the California murder charge within the terms of section 1389 which, under the provisions of article III, subdivision (a), quoted *ante,*

gave Marshall the absolute right to be tried within 180 days of August 20, 1984, absent continuances for good cause, or waiver of that right.

At some time between the signing of the understanding by Marshall and the district attorneys (on May 11, 1984), and Marshall's IAD request to be brought to trial (made Aug. 20, 1984), the parties found the understanding could not be effectuated because for Marshall to serve both murder terms in a California penitentiary, the California judgment of conviction had to predate the Texas conviction. Accordingly, he was permitted to withdraw his plea of guilty to the Texas murder and awarded a new trial on that charge. Marshall was therefore serving only a prison term for the Texas assault when, on August 20, he demanded speedy disposition of the California charge.

In September 1984, Marshall, pursuant to his IAD demand, was temporarily released by the Texas prison authorities from the assault commitment for the purpose of being taken to California for the disposition of the murder charge pending here. Once here, he broke his word and refused to plead guilty to murder. The matter was set for preliminary examination on October 3, 1984, but when it was called, the People elected not to proceed, and the case was dismissed.[2] Marshall was then returned to Texas over his objection to stand trial on the murder charge there.

For reasons not exactly clear, the Texas authorities were unable to prove the outstanding murder charge against Marshall and that charge was dismissed. Marshall remained in the Texas prison on his assault commitment and the Imperial County District Attorney filed a new complaint on the same California alleged murder, on August 5, 1985. In September 1985, Marshall waived extradition, was returned to California and arraigned on the new complaint charging the same murder. He moved for dismissal pursuant to Penal Code section 1389, contending the first dismissal of the California murder charge must be deemed to be with prejudice within the terms of Penal Code section 1389, article III, subdivision (d). His petition for writ of prohibition challenges the refusal of the superior court to dismiss his case.

### III

The People acknowledge Marshall was a prisoner serving a term of imprisonment in Texas on the felony assault when he executed and served his

---

[2]Marshall's attorney asked to have a transcript of the proceedings prepared and asked the magistrate to stay any orders to return Marshall to Texas, stating there was going to be an issue in superior court for which it would be relevant. The magistrate refused and ordered Marshall returned to Texas "forthwith."

demand under section 1389. However, the People contend that section 1389 does not require dismissal of the charges here because Marshall never intended to avail himself of the right to speedy disposition of the pending California charges, but only to use the IAD as a procedural vehicle to secure transportation to California to carry out a favorable plea bargain which he had struck with the prosecution in both Texas and California. The facial attractiveness of this argument is evident here where two separate murder charges to which Marshall once had agreed to plead guilty are being dismissed.[3]

However, section 1389 applied to Marshall when he made his demand. Thus, he became statutorily entitled to the procedural protections of the IAD, regardless of his private bargain with the district attorneys. We have been cited to no case holding the existence of such a separate stipulation[4] somehow makes the IAD's statutory provisions inoperative. Where the IAD is applicable, it is the exclusive means of transfer of prisoners and its remedial provisions do not become irrelevant simply because the transfer request was not made pursuant to the act. (*United States* ex rel. *Esola* v. *Groomes* (3d Cir. 1975) 520 F.2d 830, 837; *United States* v. *Sorrell* (E.D.Pa. 1976) 413 F.Supp. 138, 140, affd. 562 F.2d 227, cert. den. 436 U.S. 949 [56 L.Ed.2d 793, 98 S.Ct. 2858].) However, the mechanism of the statute was explicitly invoked here, and the forms printed for that purpose were used.[5] No language in the parties' stipulation waives any rights under section 1389.

Further, the relevant portion of the statute clearly mandates dismissal with prejudice when, as here, the prisoner has made his request for final disposition, has been brought to the state where the untried matter is pending, and then is returned to the original state without trial being had on the unresolved matter: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." (Art. III, subd. (d).) The use of the term "shall" makes dismissal with prejudice mandatory.

The People's reliance on *People* v. *Cella, supra,* 114 Cal.App.3d 905, is inapposite. There we interpreted a different portion of the agreement,

[3] We are not told whether there's any procedural bar to refiling the Texas murder charge should proof of Marshall's guilt be available.

[4] The plea bargain on which the People here bottom their argument was not found to have any such permanent effect in Texas. There, when Marshall returned, the charges were dismissed when the state was unable to proceed to trial.

[5] The People's argument that Marshall was brought to California pursuant to his written bargain and not the IAD is factually incorrect.

namely article IV, subdivision (e), which also mandates dismissal with prejudice of charges in the receiving jurisdiction where the prisoner is returned to the original custodial jurisdiction without trial being had on the pending matter in the second jurisdiction. We held "untenable" the proposition that article IV, subdivision (e) provides for no exceptions, and contemplated only one "transfer" or return. (*People* v. *Cella, supra,* 114 Cal.App.3d at p. 920.) Where a facial violation of the statute existed, we indicated a willingness to examine the nature of the custodial interruption to see whether it interfered with the purposes of the agreement to implement the right to a speedy trial and to minimize interference with rehabilitative custody. (*Ibid.*) In *Cella,* a technical violation of the statute had occurred when he was briefly removed from federal custody for state court appearances on a matter to which he eventually pleaded guilty, the violation consisting of his transfer from federal prison to state court and back again on a few occasions before resolution of the state matter. In the state proceedings, Cella (unlike Marshall here) expressly waived his right to a speedy trial. Accordingly, the court was not concerned with the agreement's first purpose, to expedite speedy trials, and examined only the second, concluding that the brief interruptions did not prejudice Cella's right to uninterrupted rehabilitative custody in the federal prison to any cognizable degree.

Here, however, Marshall never waived his right to a speedy trial on the California charge. He invoked the provisions of article III of the agreement by his demand for prompt disposition. By the unambiguous language of the statute, he was then entitled to be brought to trial within 180 days of his demand, and also to have the proceedings resolved in one uninterrupted episode. When the California charges were dismissed in October 1984, and Marshall was returned to Texas, the statute on its face was violated. We have here no brief and technical interruption of custody, nor waiver of speedy trial rights, as in *Cella,* but rather a substantial violation of the statutory mandate. Dismissal under such circumstances is mandatory. (*People* v. *Reyes* (1979) 98 Cal.App.3d 524, 538 [159 Cal.Rptr. 572].)

Nor were the People somehow trapped, as they have implied, by Marshall's failure to plead guilty as originally agreed.[6] They could have sought, under section 1389, article III, subdivision (a) "any necessary or reasonable continuance" of the matter, rather than permitting the case to be dismissed.

---

[6]The People always recognized Marshall might renege. The written agreement was signed by Marshall, his Texas lawyer and the District Attorney of Harris County, Texas, and Imperial County, California. It contains two separate sections, one entitled TEXAS and one labeled CALIFORNIA. The former portion states, "should for any reason the defendant not carry through with this agreement . . . said defendant waives extradition from California for . . . further judicial proceedings." The latter section reads, "Should this agreement not be carried out, for any reason . . . ."

The record discloses no impediment to such a course. Instead, they allowed dismissal and interruption of the proceedings, thus invoking mandatory dismissal provisions of article III. Even lengthy continuances for the purpose of completing good faith efforts to arrange for out-of-state witnesses or to deal with pretrial defense motions and good faith plea negotiations are permitted. (See *United States* v. *Scallion* (5th Cir. 1976) 533 F.2d 903; *State* v. *Sallee* (Mo.App. 1981) 624 S.W.2d 184; and *State* v. *Hamilton* (Minn. 1978) 268 N.W.2d 56, where the People did not move for a continuance until the day before the 180-day limit expired, and the motion was not granted until several days later.) Instead, the People did nothing, apparently content to have Marshall returned and processed by the Texas authorities. This is factually similar to the scenario addressed in *Commonwealth* v. *Klimek* (1965) 416 Pa. 434 [206 A.2d 381, 382] where the state was held to have lost jurisdiction because "[t]he simple truth is that the district attorney, acting on his own, failed to call the indictments for trial . . ." instead of asking the court for continuances.

Finally, the People ask us to "consider" the disposition of a factually similar case in *People* v. *Christensen* (1983) 113 Ill.App.3d 938 [448 N.E.2d 222], where a defendant was removed from federal custody to face state charges in Illinois pursuant to the Agreement on Detainers. Once the defendant was within the jurisdiction of the Illinois courts, the People found they were unable to prove the case and elected not to prosecute, triggering an automatic dismissal of the indictment. The defendant was promptly returned to federal custody. Unlike the case with which we deal, the Illinois prosecutor emphatically stated an intent to refile charges when he was prepared to go forward. Seven months later the defendant was reindicted and, again pursuant to the IAD, was removed from federal custody to the Illinois court. This, said the Illinois Court of Appeal, was permissible. Although not brought to our attention by the People, we note this decision was reversed by the Illinois Supreme Court in *People* v. *Christensen* (1984) 102 Ill.2d 321 [465 N.E.2d 93], relying on the mandatory language of the statute requiring dismissal with prejudice if a prisoner is returned to the original place of imprisonment before trial is had and rejecting technical maneuvering by the prosecution in an attempt to toll the statute. (*Id.*, at p. 97.)

Let a writ of prohibition issue restraining Imperial County from taking further action in superior court number 12728, People v. William Sam Marshall, except to dismiss the case.

Wiener, J., concurred.

**STANIFORTH, Acting P. J.**—I respectfully dissent.

The record here discloses the following "facts"[1] of this case.

## FACTS

On August 16, 1983, Judge Charles E. Jones of the El Centro Municipal Court issued a warrant of arrest for murder of Greg Wiff. In December 1983, California authorities were advised Greg Wiff was actually William Sam Marshall who was in custody in Florida on warrants originating in Texas for parole violations.

On January 6, 1984, California authorities learned Marshall refused to waive extradition to California so they started extradition procedures. Marshall waived extradition to Texas and was transported there on January 29. On the same day, California authorities requested a hold on Marshall to be reinstated in their jurisdiction upon his arrival. On April 27, 1984, Marshall pled guilty on aggravated assault in Texas and was sentenced to four years.

On January 31, 1984, Marshall was indicted by a Texas Grand Jury for murder. Marshall and his attorney thereafter entered into negotiations with district attorneys in California and Texas. On May 11, 1984, Marshall entered into a stipulation and agreement which provided Marshall would plead guilty to one count of murder in Texas for a term of life in prison and to one count of first degree murder in California for a term of 25 years to life in exchange for having both terms served concurrently in California. That same day, Marshall apparently pled guilty to murder in Texas.

On June 5, 1984, Marshall was sent a notice of untried indictment, information or complaint and right to request disposition about the pending charges in California.

On August 20, 1984, a Texas court ordered Marshall, "having properly waived extradition," transferred to California for disposition of the pending murder charge and then retransferred to Texas for disposition of the Texas charges "and then returned to California where any sentence imposed in the [Texas case] shall run con-currently [*sic*] with any sentence imposed in California *as provided in the agreement executed by the defendant, . . .*"

The same day, August 20, Marshall signed a notice of place of imprisonment and request for final disposition which was sent to the Imperial County District Attorney's office, apparently on August 24. Six days later,

---

[1]As will be herein documented, the crying need is for thorough *fact finding* on certain critical issues at the trial level *before* determining the legal merit of Marshall's claim. The lack of certainty is reflected in the factual recital.

Imperial County Assistant District Attorney Larry E. Smith executed an acceptance of temporary custody offered for disposition of the detainer. The District Attorney of Imperial County in his brief represents this acceptance was signed because it was understood Marshall would not otherwise be released to California.

Marshall was transferred to California on September 20, 1984, and arraigned the following day. He pled not guilty. A preliminary hearing was set for October 3. On October 3, when it appeared Marshall would not abide by this stipulation but would continue to plead not guilty, Imperial County District Attorney Thomas Storey moved to dismiss because he was unable to proceed (due to lack of witnesses) with a preliminary hearing within the 10-day period required by Penal Code section 859b.[2] Over Storey's objection, Judge Jones ordered Marshall returned to Texas. Marshall was returned.

Meanwhile, according to the People's brief, Marshall had withdrawn his guilty plea in Texas, apparently because the authorities believed it was necessary he plead guilty first in California in order to have the term served in California and after his return to Texas from California, the Texas murder charges were dismissed because of the inability to locate witnesses after the passage of time.

The California murder charges were refiled on August 5, 1985, and a hold again placed on Marshall in Texas. Marshall apparently waived extradition and was brought out to California where he was arraigned on September 20, 1985. On October 18, 1985, Marshall moved to dismiss the case because the prior dismissal of the charges against him was with prejudice pursuant to section 1389. The motion was denied. Following a preliminary hearing, Marshall was bound over for trial and an information charging him with murder, grand theft and an unlawful driving or taking of a vehicle was filed on November 1, 1985. Marshall's section 995 motion to set aside the information was denied. He thereafter sought a writ of prohibition directing the Imperial County Superior Court to dismiss the information. We granted the writ. The Imperial County District Attorney sought and obtained the instant rehearing.

Discussion

I

Section 1389 is a codification of the Interstate Agreement on Detainers (Agreement) to which both California and Texas are parties. The Agreement

---

[2]All statutory references are to the Penal Code unless otherwise specified.

provides a method for transferring a prisoner from one jurisdiction to another for disposition of pending charges. Under the Agreement, once a state has lodged a detainer based on an uncharged indictment, information or complaint against a prisoner in another jurisdiction, the prisoner must be notified of the detainer and given an opportunity to request a final disposition of the pending charges. (Art. III, subd. (c).) Then, either the prisoner or the prosecutor in the state where charges are pending may initiate procedures leading to transfer and disposition of the charges. (Arts. III, IV.) If the prisoner requests final disposition of the charges, then she/he must be brought to trial within 180 days after the appropriate court and prosecutor have received formal notification. (Art. III, subd. (a).) If the prosecutor initiates proceedings to obtain transfer of the prisoner, then the prisoner must be brought to trial within 120 days of his/her arrival in the receiving state. (Art. IV, subd. (c).) Either the 180-day or 120-day period may be extended "for good cause shown in open court, the prisoner or his [or her] counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (Arts. III, subd. (a), IV, subd. (c).) However, a prisoner must be returned to the sending state "[a]t the earliest practicable time consonant with the purposes of [the] agreement." (Art. V, subd. (e).)

The Agreement also provides: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." (Art. III, subd. (d).)

The purpose of the Agreement is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." (Art. I; *People* v. *Wilson* (1977) 69 Cal.App.3d 631, 634 [138 Cal.Rptr. 259].) Untried charges and detainers produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. (Art. I; *People* v. *Castoe* (1978) 86 Cal.App.3d 484, 487 [150 Cal.Rptr. 237].) By implementing a prisoner's right to a speedy trial, the Agreement seeks to minimize interference with such treatments and programs. (*People* v. *Cella* (1981) 114 Cal.App.3d 905, 920 [170 Cal.Rptr. 915].) The Agreement states it is to be liberally construed so as to effectuate its purpose. (Art. IX.)

## II

The Agreement is not the only method of obtaining temporary custody of a person incarcerated in another jurisdiction. (*United States* v. *Mauro* (1978) 436 U.S. 340, 361 [56 L.Ed.2d 329, 347, 98 S.Ct. 1834, 1847];

*United States* v. *Woods* (9th Cir. 1985) 775 F.2d 1059, 1069.) If the government proceeds by some other means, then the Agreement does not apply. (See *United States* v. *Kenaan* (1st Cir. 1977) 557 F.2d 912, 915, cert. den. 436 U.S. 943 [56 L.Ed.2d 784, 98 S.Ct. 2844]; *United States* v. *Roy* (2d Cir. 1985) 771 F.2d 54, 59, cert. den. (1986) — U.S. — [89 L.Ed.2d 918, 106 S.Ct. 1520; *Johnson* v. *Williams* (3d Cir. 1981) 666 F.2d 842, 844; *United States* v. *Scallion* (5th Cir. 1977) 548 F.2d 1168, 1173; *Ridgeway* v. *United States* (6th Cir. 1977) 558 F.2d 357, 361, cert. den. 436 U.S. 946 [56 L.Ed.2d 788, 98 S.Ct. 2850]; *United States* v. *Woods, supra,* 775 F.2d 1059, 1061; *Kleinbart* v. *United States* (D.C.App. 1981) 426 A.2d 343, 356-357; *State* v. *Boone* (1978) 40 Md.App. 41 [388 A.2d 150, 152]; *Com.* v. *Florence* (1979) 7 Mass.App. 126 [387 N.E.2d 152, 153]; *Robison* v. *State* (S.D. 1979) 278 N.W.2d 463, 464; *Moore* v. *Whyte* (W.Va. 1980) 266 S.E.2d 137, 141.) Once custody has been obtained by other means, the filing of a detainer may be viewed as a "meaningless event." (*United States* v. *Woods, supra,* 775 F.2d 1059, 1061.) Furthermore, the Agreement's sanctions have been found inapplicable when the Agreement's procedures were utilized, but not for the purpose of bringing the prisoner to the state to stand trial. (See, e.g., *United States* v. *Dixon* (6th Cir. 1979) 592 F.2d 329, 335 [prisoner brought to state in order to confer with counsel].)

In the case at bench, there initially arises a question as to whether the transfer here was completed pursuant to the Agreement. From the record before us, it does not appear whether Marshall executed his request for final disposition before or after the Texas court ordered Marshall transferred to California. The Texas court order makes no reference to Marshall's request, but rather states: ". . . it is the order of the Court, that, this defendant be transferred, after having properly waived extradition to California, to said State of California and following the disposition of his charges there, be returned to the State of Texas for disposition of the above numbered and styled cause, and then returned to California where any sentence imposed in the above referenced and styled cause shall run con-currently [*sic*] with any sentence imposed in California *as provided in the agreement executed by the defendant, and representatives of the States of California and Texas and a copy of which is attached hereto as Exhibit A, incorporated herein by reference for all purposes as in an original.*" (Italics added.)

The Imperial County Assistant District Attorney's request for temporary custody of Marshall was executed after this court order. The district attorney, in his brief, represents this formal request was made only because it was represented that without this request, Marshall would not be released to California. It further appears, as represented by the district attorney, that at the time Marshall was transferred to California, it was expected Marshall would plead guilty as provided in his written stipulation.

These facts suggest Marshall's transfer was a result of the stipulation and not due to invocations of the Agreement. Those invocations appear to have been mere formalities, believed by the parties to be necessary, but actually superfluous, meaningless events. If the transfer was pursuant to a stipulation, then the stipulation must govern the situation. The stipulation does not contain any time limitations on trial nor prohibitions on return to Texas before a trial in California.

## III

A prisoner's rights under the Agreement may be waived. (*United States* v. *Rossetti* (1st Cir. 1985) 768 F.2d 12, 18; see also *People* v. *Cella, supra,* 114 Cal.App.3d 905, 918.) A waiver will be found if a prisoner affirmatively requests to be treated in a manner contrary to the procedures prescribed by the Agreement. (*Brown* v. *Wolff* (9th Cir. 1983) 706 F.2d 902, 907.)

Numerous courts have found the dismissal sanctions of the Agreement do not apply if trial delay or a return was caused by the prisoner. (See, e.g., *United States* v. *Ford* (2d Cir. 1977) 550 F.2d 732, affd. *sub nom. United States* v. *Mauro, supra,* 436 U.S. 340 [56 L.Ed.2d 329, 98 S.Ct. 1834] [prisoner requested return]; *United States* v. *Bryant* (4th Cir. 1979) 612 F.2d 806, cert. den. 446 U.S. 920 [64 L.Ed.2d 274, 100 S.Ct. 1855] [delay due to prisoner's need to prepare]; *United States* v. *Boggs* (5th Cir. 1980) 612 F.2d 991, cert. den. 449 U.S. 857 [66 L.Ed.2d 72, 101 S.Ct. 156] [return at prisoner's request]; *Gray* v. *Benson* (10th Cir. 1979) 608 F.2d 825 [same]; *United States* v. *Cumberbatch* (S.D.N.Y. 1976) 438 F.Supp. 976, 979, affd. on other grounds (2d Cir. 1977) 563 F.2d 49, cert. den. 436 U.S. 946 [56 L.Ed.2d 788, 98 S.Ct. 2850] and affd. without opn. 598 F.2d 610 [delay due to prisoner's pretrial motions—"since (the prisoner) has repeatedly obstructed the 'expeditious and orderly disposition' of this case, it is highly inappropriate to permit him to take advantage of a statute whose purpose is to encourage such a disposition"]; *People* v. *Posten* (1980) 108 Cal.App.3d 633 [166 Cal.Rptr. 661] [some of delay due to prisoner's refusal to travel by air]; *Naughton* v. *State* (Del.Super. 1982) 453 A.2d 796 [delay due to prisoner being unrepresented and later making discovery motion]; *Cobb* v. *State* (1979) 244 Ga. 344 [260 S.E.2d 60] [delay due to prisoner's numerous pretrial motions]; *People* v. *Stroble* (1971) 31 Mich.App. 94 [187 N.W.2d 474] [delay due to prisoner's habeas corpus petition]; *State* v. *Sallee* (Mo.App. 1981) 624 S.W.2d 184 [delay due to defense not being prepared]; *People* v. *Cook* (1978) 63 App.Div.2d 841 [406 N.Y.S.2d 643] [some delay due to defense motions]; *People* v. *Engelson* (1977) 55 App.Div.2d 960 [391 N.Y.S.2d 446] [return at prisoner's request]; *Commonwealth* v. *Mallon* (1980) 279 Pa.Super. 350 [421 A.2d 234, 239]

[same because prisoner preferred sending state's facility and had job there]; *State* v. *Finley* (1982) 277 S.C. 548 [290 S.E.2d 808] [delay due to prisoner's motion]; 98 A.L.R.3d 160.)

It has been further held that "'[a prisoner] cannot by his own action manufacture a violation of the [Agreement] and then seek relief under it.'" (*United States* v. *Boggs, supra,* (5th Cir. 1980) 612 F.2d 991, 993.) "[A prisoner] cannot lull the prosecution into plea bargaining attempts only to file for a discharge after the expiration of the 180 days." (*Commonwealth* v. *Martin* (1971) 445 Pa. 49 [282 A.2d 241, 243] [prisoner transferred for trial, proceeded to engage in lengthy plea negotiations beginning 180 days]; see also *People* v. *Cranmer* (1976) 55 App.Div.2d 786 [389 N.Y.S.2d 905, 906] [delay due to prisoner changing mind about pleading guilty].)

*United States* v. *Boggs, supra,* 612 F.2d 991, involves a factual situation akin to the case at bench. In *Boggs,* the prisoner was incarcerated in North Carolina. Federal charges were pending in Georgia. The Georgia authorities lodged a detainer against him. The prisoner agreed to plead guilty to the North Carolina charges. The Georgia authorities agreed, but the prisoner was nevertheless transferred to Georgia. At the Georgia arraignment, Boggs requested to be returned to North Carolina to plead guilty. Once back in North Carolina, he wrote to Georgia authorities stating he was willing to plead guilty in Georgia. He was again transferred to Georgia, but pleaded not guilty. Following a trial, he was convicted in Georgia. He later moved to vacate his Georgia sentence on the ground the Agreement's 120-day limitation and the trial-before-return provisions had been violated. The Fifth Circuit Court of Appeals disagreed, finding the prisoner had manufactured the violation of the Agreement and was not entitled to seek relief under it. (*Id.,* at p. 993.)

As stated in *People* v. *Cranmer, supra,* 389 N.Y.S.2d 905, 906: "The defendant while incarcerated in Florida forwarded to the Binghamton City Court a demand for a speedy trial which was received on April 14, 1975 and apparently given to the District Attorney on the same day. The matter was scheduled for trial on October 6, 1975. The defendant contends that the matter was not timely disposed of pursuant to the provisions of article 580 of the Criminal Procedure Law because trial commenced after October 6, 1975. However, upon argument of this matter at the trial the District Attorney pointed out that the case was adjourned beyond the October 6 date because the defendant was going to plead guilty, but later changed his mind. This allegation was not disputed by the defendant and it is thus apparent that if he was not timely tried, it was at his own request and as the result of his own conduct. Under such circumstances there has been a waiver of his right to a speedy trial (cf. *People* v. *White,* 51 A.D.2d 221, 223, 380

N.Y.S.2d 230, 231; *People* v. *White,* 33 A.D.2d 217, 305 N.Y.S.2d 875; see *People* v. *Panarella,* 50 A.D.2d 304, 377 N.Y.S.2d 709).''

Similarly, in the case at bench, there is at least circumstantial evidence Marshall created the facts giving rise to the violation of the agreement by lulling the El Centro authorities into believing he would be pleading guilty as agreed in the stipulation, requesting transfer to effectuate that stipulation and then breaching it. Marshall, of course, had the right to change his mind, to refuse to plead guilty. However, it is not just or a rational statutory interpretation to permit a defendant to request a transfer for the purpose of effectuating the stipulation, then to breach that stipulation, and upon this duplicitous basis, to obtain dismissal of the charges. Such a determination further appears inappropriate in light of the fact that Marshall's return to Texas furthered the Agreement's purposes of minimizing disruption of any treatment and rehabilitation programs. Marshall's return resolved uncertainties of untried indictments, informations or complaints since there appear to have been charges pending in Texas against Marshall at the time of his return. (*Neville* v. *Friedman* (1977) 67 Ill.2d 488 [367 N.E.2d 1341, 1344].)

## IV

The Agreement states it is to "be liberally construed so as to effectuate its purposes." (Art. IX.) The Agreement states the underlying purpose is to resolve "uncertainties which obstruct programs of prisoner treatment and rehabilitation" by providing speedy disposition of uncharged indictments, informations and complaints. (Art. I.)

Numerous courts have recognized the Agreement was adopted to remedy abuses which occurred in the prior system which resulted in hardships to prisoners against whom detainers had been lodged, including the prisoner being automatically barred from special prison work programs, athletic programs and privileges, from incarceration in minimum security facilities; being denied the possibility of concurrent sentencing even for crimes resulting from a single episode or closely related in time; being ineligible for parole or commutation of sentence; and being prejudiced from delay in having the charges tried. As a result prisoners against whom detainers had been lodged had little incentive to perform well in prison. (See *Carchman* v. *Nash* (1985) 473 U.S. 716, 719-720, 730 fn. 8 [87 L.Ed.2d 516, 520, 527, 105 S.Ct. 3401, 3403, 3408-3409, fn. 8]; *Cuyler* v. *Adams* (1981) 449 U.S. 433, 448-449 [66 L.Ed.2d 641, 653-655, 101 S.Ct. 703, 712]; *United States* v. *Mauro, supra,* 436 U.S. 340; *United States* v. *Ford, supra,* 550 F.2d 732; *United States* v. *Dobson* (3d Cir. 1978) 585 F.2d 55, 58 fn. 9, cert. den. 439 U.S. 899 [58 L.Ed.2d 247, 99 S.Ct. 264]; *Kerr* v. *Finkbeiner* (4th Cir. 1985) 757 F.2d 604, 607, cert. den. 474 U.S. 929 [88 L.Ed.2d

269, 106 S.Ct. 263]; *United States* v. *Gallipoli* (5th Cir. 1979) 599 F.2d 100, 102; *Ridgeway* v. *United States, supra,* 558 F.2d 357, 361; *Cooper* v. *Lockhart* (8th Cir. 1973) 489 F.2d 308, 314, fn. 10; *Burrus* v. *Turnbo* (9th Cir. 1984) 743 F.2d 693, 697; *Grey* v. *Benson, supra,* 608 F.2d 825, 827; *People* v. *Lewis* (Colo. 1984) 680 P.2d 226, 229-230; *State* v. *Anonymous* (1980) 36 Conn.Supp. 327 [419 A.2d 904, 906]; *Christian* v. *United States* (D.C.App. 1978) 394 A.2d 1, 34, cert. den. (1979) 442 U.S. 944 [61 L.Ed.2d 315, 99 S.Ct. 2889 (1979)]; *Webb* v. *State* (Ind. 1982) 437 N.E.2d 1330, 1331; *People* v. *Christensen* (1984) 102 Ill.2d 321 [80 Ill.Dec. 302, 465 N.E.2d 93, 96]; *State* v. *Boone, supra,* 388 A.2d 150, 152; *Boyd* v. *State* (1982) 51 Md.App. 197 [441 A.2d 1133, 1137 and fn. 5], affd. 294 Md. 103 [447 A.2d 871]; *Robison* v. *State, supra,* 278 N.W.2d 463, 464; see also H.Rep. No. 91-1018, p. 3 (1970); S.Rep. No. 91-1356, p. 3 (1970), 1970 U.S. Code Cong. & Admin. News, p. 4864; Council of State Governments, Suggested State Legislation (1956), Program for 1957, p. 74.) "The remedial purposes of the [Agreement on Detainers] should not be frustrated by technicalities unrelated to its purpose of facilitating the speedy trial or other resolution of charges pending against prisoners incarcerated in other jurisdictions. . . . 'The signatories to the Agreement did not intend to let technical violations operate to release duly convicted prisoners from serving the balance of their sentences . . . .'" (*Hearn* v. *State* (Utah 1982) 642 P.2d 757, 759; see also *State* v. *Quiroz* (1980) 94 N.M. 517 [612 P.2d 1328, 1331].)

The courts, mindful of the purposes of the Agreement, have refused to extend the Agreement's sanction of dismissal to situations where these purposes would not be furthered. Thus, the United States Supreme Court in *Carchman* v. *Nash* (1985) 473 U.S. 716 [87 L.Ed.2d 516, 105 S.Ct. 3401], held the trial within 180-day provision of the Agreement does not apply to a prisoner who faces a revocation of probation not only because the express language of the Agreement refers to an "untried indictment, information or complaint" and to a prisoner being "prosecuted" or "brought to trial" (*id.,* at p. 725 [87 L.Ed.2d at p. 523, 105 S.Ct. at pp. 3405-3406]), but also because "the abuses that in part motivated adoption of the Agreement generally do not occur in the context of probation-violation detainers" (*id.,* at p. 731 [87 L.Ed.2d at p. 527, 105 S.Ct. at p. 3409]).

Similarly, the Agreement has been held inapplicable to detainers based on parole violations. (See, e.g., *United States* v. *Dobson, supra,* 585 F.2d 55.) Likewise, because the Agreement's purposes would not be furthered, it has been held not to apply to pretrial detainees. (See, e.g., *United States* v. *Roberts* (6th Cir. 1977) 548 F.2d 665, 670-671, cert. den. 431 U.S. 931 [53 L.Ed.2d 246, 97 S.Ct. 2636]; *United States* v. *Reed* (9th Cir. 1980) 620 F.2d 709, 711.) As the court explained in *State* v. *Olson* (1985) 146

Ariz. 336 [705 P.2d 1387, 1389]: "A pretrial detainee has no immediate interest in any institutional program of treatment or rehabilitation because the nature of his continued confinement is uncertain and contingent upon the outcome of the trial and the imposition of sentence."

Further, courts have recognized in some circumstances the policies underlying the Agreement's antishuttling provision, i.e., minimizing disruption to the prisoner's program of treatment and rehabilitation, is best served by returning the prisoner to the sending state before trial. Thus, the court in *State* v. *Grizzell* (Fla.App. 1981) 399 So.2d 1091, 1092-1093, reasoned the sanction of dismissal was not warranted when the prisoner was returned to the sending state pending appeal of a dismissal of the charges not only because the prisoner had contested a stay of his return, but also because the return "was in furtherance of the stated purpose of the act to 'prevent excessive interference with the prisoner's rehabilitation in a state prison system.' [Citations.]" The court noted the appeal took nearly 20 months and had the prisoner remained in the receiving state for the 20 months, "such extended stay would clearly have been excessive interference with his rehabilitation in the [sending state's] prison system." (*Id.,* at p. 1093; see also *People* v. *Dye* (1977) 69 Ill.2d 298 [371 N.E.2d 630]; *Neville* v. *Friedman, supra,* 367 N.E.2d 1341, cert. den. 437 U.S. 903 [57 L.Ed.2d 1132, 98 S.Ct. 3088].)

Courts have also held a brief removal of a prisoner from another state's custody with a return before trial does not result in any significant disruption of the prisoner's program of treatment and rehabilitation and therefore does not require the sanction of dismissal. (See *United States* v. *Chico* (2d Cir. 1977) 558 F.2d 1047, cert. den. 436 U.S. 947 [56 L.Ed.2d 788, 98 S.Ct. 2850]; *Sassoon* v. *Stynchombe* (5th Cir. 1981) 654 F.2d 371; *United States* v. *Boyce* (E.D.Va. 1981) 518 F.Supp. 862, affd. without opn. (4th Cir. 1982) 681 F.2d 817; *People* v. *Cella, supra,* 114 Cal.App.3d 905; *State* v. *Sassoon* (1978) 240 Ga. 745 [242 S.E.2d 121]; *People* ex rel. *Franciotti* v. *Flood* (1975) 50 App.Div.2d 913 [377 N.Y.S.2d 186]; see also *United States* v. *Simmons* (W.D.Pa. 1977) 437 F.Supp. 621, affd. without opn. (3d Cir. 1978) 586 F.2d 836 [federal and state prisoners housed in same facility]; *Prince* v. *State* (Tex.App. 1982) 638 S.W.2d 550 [same].)

In *People* v. *Cella, supra,* 114 Cal.App.3d 905, 921, this court found the sanction of dismissal for returning a prisoner before trial as provided in article IV, subdivision (e), was not warranted when a prisoner in federal custody made a brief state court appearance for arraignment and was returned to federal custody before trial. We found while article IV, subdivision (e), had been "technically violated," his return to federal custody before trial "did not violate his rights under the Agreement because the apparent result

of the expedited return was to enable him to participate in presumedly rehabilative programs" at the federal facility. (*Ibid.*) We observed the prisoner had "never alleged and [had] thus failed to establish that his right to uninterrupted rehabilitative incarceration was prejudiced in any manner by the return" to the federal facility. (*Ibid.*)

In *Cella,* we declined "to apply article IV, subdivision (e), mechanically in total disregard of the stated purposes of the agreement." (*Ibid.*) We adopted a "more pragmatic, less absolute" construction of article IV, subdivision (e) (*id.,* at p. 920), one which focused on whether the prisoner's "transfer" or "return" was consistent with the stated purposes of the Agreement (*id.,* at p. 921). We concluded an automatic dismissal without consideration of whether the return was consistent with the Agreement's purpose of minimizing disruption to the prisoner's program of treatment and rehabilitation "'would be based upon a construction of the Agreement against, rather than in behalf of, the legitimate interest of [defendant] in receiving rehabilitative education while in federal custody.' [Citation.]" (*Ibid.*)

The reasoning of *Cella* is sound: The courts should not mechanically apply article IV, subdivision (e), in total disregard of its stated purposes. The courts must look to whether the return was consistent with the Agreement's purposes and whether the prisoner's right to uninterrupted rehabilitative incarceration was prejudiced in any way before applying the sanction of dismissal.

In the instant case, at the time Marshall was transferred to California, he faced an indictment for murder in Texas. Thus, his Texas incarceration was not only punishment for an aggravated assault conviction but also a pretrial detention. As such, it cannot be said Marshall had an immediate interest in an institutional program of treatment or rehabilitation in Texas because the nature of his continued confinement was uncertain and contingent upon the resolution of both the California *and* Texas charges. Further, Marshall was transferred to California to facilitate the plea agreement's provision Marshall would be incarcerated in California. In other words, Marshall, as indicated by the plea agreement, contemplated an institutional program of treatment and rehabilitation in California, not Texas.

Once Marshall failed to plead guilty, his immediate return to Texas furthered the purposes of the Agreement. Returning Marshall to Texas furthered the Agreement's aim of providing a prisoner with a speedy resolution of outstanding charges; so long as Marshall remained in California, the Texas charge would remain unresolved. Return also furthered the Agreement's aim of minimizing interference with programs of treatment and rehabilitation

which might be available to a prisoner; a return to Texas after 13 days in California certainly furthered this purpose more than retaining Marshall in Imperial County jail as a pretrial detainee for almost a year while the prosecutor prepared his case.

Finally, Marshall has failed to show his right to an uninterrupted rehabilitative incarceration was prejudiced in any way by his return to Texas.

Many of the "facts" referred to in this dissent are *representations* made by the Imperial County District Attorney in his brief; *there was no evidentiary hearing below.* Accepting arguendo the majority's statutory interpretation, yet remand for further proceedings is absolutely essential to determine the true facts before such drastic action as dismissal of murder charges with prejudice.